GEORGE H. WHIKE CONSTRUC-
TION COMPANY
v.
The UNITED STATES.
No. 290–52.

United States Court of Claims.
May 1, 1956.

 

Earl W. Shinn, Chevy Chase, Md., for plaintiff.

Francis X. Daly, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff sues to recover certain moneys which it claims are due it under a construction contract with the Federal Public Housing Authority (FPHA).

On February 9, 1943, the President issued Executive Order 9301, U.S.Code Cong.Service 1943, p. 5.9, which required a minimum workweek of 48 hours in all places of employment. This order was not made applicable to the area of Canton, Ohio, where the contract in controversy was performed, until August 9, 1943. On February 11, 1943, FPHA issued an invitation to bid for the construction of certain war housing in Canton, Ohio. Plaintiff was the low bidder among the three who submitted bids. Plaintiff's bid was based on the assumption that it would work a 40-hour week. It attached a note to its bid in the following terms:

> "This bid is based on 40 hour week. If it becomes necessary to work more than 40 hours, by Executive Order, we are to be reimbursed for the extra cost of such overtime, plus taxes and insurance."

Plaintiff's president and secretary came to the regional office of the FPHA in Cleveland, Ohio, on the afternoon of February 26, 1943, for the purpose of executing the contract on which plaintiff had bid. The contracting officer, Mr. C. F. Sharpe, the Regional Director, was not in at that time and the FPHA was represented by two men in the legal department of the regional office of the Authority. The contract presented to plaintiff's officers for execution contained the following proviso which had not been

in the form contract furnished the bidders:

"This contract is subject to Executive Order 9301, Establishing a Minimum War Time Workweek of Forty-Eight Hours, and to the regulations and directives, if any, issued under said Executive Order by the War Manpower Commission or by the Chairman thereof."

Plaintiff's officers objected to the inclusion of this proviso in the contract and refused to sign it on that account. The FPHA lawyers told plaintiff that this provision could not be removed because the Washington office would not approve, but that plaintiff was protected by the provision in the bid which it had submitted.

When the FPHA representatives refused to delete the objectionable language in the contract, plaintiff's representatives asked for a letter from Mr. Sharpe. They had heard of another Canton contractor who had signed a contract with FPHA about a week before and had received a letter from the Government protecting it against the effects of Executive Order 9301. The letter in question was one written by Mr. Sharpe to Mr. H. S. Melbourne, Melbourne Bros. Construction Co., Canton, Ohio, on February 25, 1943, the day before the date of execution of the contract involved here. This letter contained the following language:

"I understand that you feel that the standard language with respect to Executive Order 9301, incorporated in the contract between you and the Government, dated February 24, 1943, for the construction of the War Housing Project located at Canton, Ohio (OHIO–33036), will not completely protect you in the event that the Canton area is placed, by the War Manpower Commission or the Chairman thereof, in the category of areas requiring the establishment and maintenance of a minimum war time workweek of forty-eight hours.

"This is to advise you that the intent of the contract documents and the understanding of the parties thereto is that, if the Canton area is placed in the category of areas requiring the establishment and maintenance of the minimum war time workweek of forty-eight hours, the Government will reimburse you, by Change Order or otherwise, for the actual expenditures (including necessary insurance) made for the actual overtime required to establish and maintain such a forty-eight hour minimum workweek."

It does not appear, however, whether plaintiff's officers had seen the letter or knew its exact content.

Plaintiff's representatives were told that they could not get a letter from Mr. Sharpe since he was not in at that time. The Government lawyers assured them, however, that the qualifications in plaintiff's bid would protect it if Executive Order 9301 were to become effective in the Canton area, and plaintiff's president signed the contract on these assurances. The assurances were given in lieu of the letter. Mr. Sharpe executed the contract for the Government later that same afternoon. Plaintiff began work under the contract on March 1, 1943.

Due to a great shortage of labor in the Canton area, plaintiff was delayed in the performance of its contract. Prior to August plaintiff repeatedly raised the possibility of working its men more than 40 hours in order to more fully utilize the labor force available and thus speed the completion of the job. Plaintiff was not willing to order overtime, however, unless the Government would authorize reimbursement for the additional expense. The Government never gave such an authorization but it did grant plaintiff time extensions.

Executive Order 9301 was made effective in the Canton area on August 9, 1943. On August 13 defendant's project manager notified plaintiff that the job was to be put on a 48-hour week basis. Plaintiff placed the job on that basis

the following day. The project manager did not tell the Whike brothers that they would be reimbursed for the premium time incident to Saturday work performed by plaintiff's employees as a result of compliance with Executive Order 9301. However, plaintiff was told by the project manager to record the overtime separately on the usual payroll reporting forms which had been furnished to the plaintiff previously.

It has been stipulated between the parties that if the plaintiff is entitled to recover, as a matter of law, by reason of putting its job on a 48-hour week on August 14, 1943, as a result of Executive Order 9301, its damages are $8,165.56.

We have a situation in which plaintiff's president was induced to sign a contract on the representations of the lawyers of the contracting officer that the provision for reimbursement contained in the bids would protect plaintiff. The assurances were given in lieu of a letter which would have stated that plaintiff would be protected by the terms of the contract as it was being interpreted and applied in that area. They were given by the representatives of an agency that had power to amend contracts unilaterally without regard to consideration if "such action would facilitate the prosecution of the war," under the First War Powers Act, 55 Stat. 838, 839, 50 U.S.C.Appendix, § 611. They were given by persons peculiarly competent in the matter. Under the circumstances this amounted either to an outright promise or to a representation giving rise to an estoppel.

These assurances were made by the lawyers in the regional office of the FPHA during the temporary absence of the contracting officer. The lawyers were from the Legal Department of the regional office, whose director was the contracting officer. The contracting officer returned later that day, after the plaintiff had executed the contract, and signed it on behalf of the FPHA. This same contracting officer had given written assurances to another Canton contractor that he would be reimbursed in case Executive Order 9301 became applicable in the Canton area. This fact was known to plaintiff's representatives. In view of all these circumstances it is reasonable to conclude that the assurances given plaintiff had the effect of binding the Government.

These assurances were not contrary to any provisions in the contract. They were acted on by plaintiff which signed the contract in reliance on them. Plaintiff's subsequent actions did not contradict its reliance on them. Prior to the effective date of the order plaintiff did not use overtime work on the job; afterwards, it kept special records of the exact amount of overtime. After plaintiff had changed its position to its detriment in relying on these assurances the defendant may not now urge that they were not binding on it and should not be enforced. We think the rule given in section 90 of the Restatement of Contracts is applicable here:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

We think plaintiff is entitled to be reimbursed for the increase in its costs due to being required to adopt a 48-hour workweek after August 14, 1943, as a result of the application of Executive Order 9301.

We are aware of the requirement that any representative must have authority in order to bind the Government and we are in full accord with the necessity of such a limitation. We have frequently invoked that rule of law.

But here the man who had authority to modify the contract was in the area, the two men who were his immediate counsel for the occasion were present. These men not only knew of the letter from the contracting officer, they undoubtedly either drew or approved it. They gave the lay contractor a very

plausible assurance as to the manner in which the provisions of similar contracts were being applied in that area. In these circumstances to permit Government legal representatives who had such positions and were acting in such circumstances as to lead any normal person to regard them as having capacity to act in the matter, to escape responsibility completely would be like authorizing Government employees to set a trap to lure the unwary into signing a contract. We do not believe it is the purpose of responsible officials of the Government to have a part in such a procedure.

It may be added that this particular contract contained a provision that the specifications, schedules, and drawings are made a part of the contract.

Under the term "General Conditions" the specifications contain, *inter alia*, the following:

"a. The term 'Contract' means the agreement executed by the Government and the Contractor of which these General Conditions form a part.

\*  \*  \*  \*  \*  \*

"d. The Contract Documents are composed of the Invitation for bids; bid form, [etc.]  \*  \*  \*"

From this it appears that the bid form was made one of the contract documents, as defined under the "General Conditions", which, in turn, were a part of the contract. Attached to plaintiff's bid form was the qualification as to the 40-hour week. All this certainly lends support to the assertions made by the FPHA attorneys that the bids would protect plaintiff. Sharpe's letter to Melbourne also says that the "contract documents" and the "understanding of the parties thereto" intended reimbursement. Plaintiff's representatives, as laymen, might well feel that the bids did protect plaintiff.

In view of all these facts we think the Government is bound by the assurances made. Any other result would manifestly be unjust. Plaintiff is entitled to recover the stipulated amount and judgment will be rendered in its favor in that amount. Monks v. United States, 79 Ct.Cl. 302, 334.

It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.

LARAMORE, Judge (dissenting).

I respectfully dissent for the following reasons. Executive Order 9301 and the regulations under it were acts of the defendant in its sovereign capacity. Damages cannot flow from sovereign acts unless Congress waives the Government's sovereign immunity.

Plaintiff, at the time of preparing its bid, knew of Executive Order 9301 and the possibility of extra costs resulting from compliance. Instead of figuring possible costs in preparing its bid, plaintiff chose to ignore the possibility and thereby became the lowest bidder. However, plaintiff sought to take care of the contingency by submitting a qualified bid, which could have been rejected by defendant. Defendant chose to negotiate the qualification out of the bid by entering into a contract which eliminated the qualification. Plaintiff signed the contract which provided that if more than 8 hours a day was worked on the job it would be without additional cost to the Government. The contract provided that it was subject to Executive Order 9301 and the regulations under it.

I believe the plaintiff is bound by the contract as signed and all prior discussions between the parties were merged into the written contract. Furthermore, the persons with whom plaintiff talked prior to signing the contract were without authority to waive the sovereign immunity and lacked authority to bind the Government by any oral promises made.

I would dismiss the petition.