**H. LANDAU & CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 403–86C.**

United States Claims Court.

Dec. 2, 1988.

Ruth E. Ganister, West Chester, Pa., for plaintiff.

Stephen J. McHale, with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen, and Thomas W. Petersen, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This is an action brought by a supplier to a government contractor based on representations made by government officials. Plaintiff, H. Landau & Co., alleges that the officials made representations that the agency involved, the Small Business Administration ("SBA") would guarantee payment to Landau, and that these actions either created an implied-in-fact contract, or now estop the defendant from denying a contractual obligation. Pending are the parties' cross motions for summary judgment. For the reasons discussed below the defendant's motion is due to be granted.

### I. FACTUAL BACKGROUND

The parties have agreed on most of the facts. Those points on which they disagree are either assertions of law, or, as discussed below, do not preclude summary judgment.

On October 25, 1983, SBA was awarded Contract No. DLA 100–84–C–4049 by the Defense Personnel Support Center, pursuant to section 8(a) of the Small Business Act, 15 U.S.C. § 637(a) (1982). On October 27, 1983 SBA then awarded subcontract No. SB 3–84–1–4002 to Carilee, Inc. which agreed to supply 25,000 extreme cold weather sleeping bags to the Support Center at a price of $3,613,125.00. Under contract modification 8(a)(2) dated December 12, 1983, SBA provided Carilee with advance financing in the amount of $1,139,000.00 to be liquidated through a special bank account. Withdrawals could be made only over the signatures of both an authorized representative of SBA and an authorized representative of Carilee. The two contracts and the modification were executed on behalf of the SBA by Ms. Delores Ellis, a warranted contracting officer and the Assistant Regional Administrator for Minority Small Business and Capital Development. Mr. Robert C. Harris and Mr. Earl D. Johnson of the SBA district office in Pittsburgh were designated as the SBA countersignatories on the special bank account. Neither was a warranted contracting officer.

Landau is a textile converter, and has been a supplier of textile products to the Government both as a prime contractor and as a supplier to prime contractors. Landau became involved in November 1983 when Carilee placed orders for cloth with it. Landau was reluctant, however, to extend credit to Carilee for such orders because it feared that Carilee might not be able to pay. To allay Landau's concern, on January 24, 1984 Harris sent Landau a letter which contained the following: "Pursuant to our telephone conversation of January 23, 1984, on Carilee, Inc. the Small Business Administration will guarantee payment on those materials that were ordered for the starting of the contract. The dollar figure discussed was about $250,000.00 [sic] once invoices are received, payment will follow in a week to ten days." Landau was paid in the amounts of $104,905.02 and $124,718.98, by checks drawn on the special account.

Harris subsequently issued two more letters of guarantee, one for $110,000 on June 18, 1984 and one for $158,135.78 on June 26, 1984. On August 17, 1984, Johnson issued another letter guaranteeing $111,624.80. Landau shipped materials in reliance on the letters and has received payment of $266,568.75. It claims that SBA owes it a balance of $124,401.33.

Pursuant to SBA Standard Operating Procedure 80–05,

[A]ll requests for disbursements of advance payments will be reviewed by the SBA contract administrator.... When the ARA/MSB & COD [Ellis] approves the requested disbursement, in writing, the designated SBA countersigning agent may sign the appropriate check(s).... (Note that all disbursements from the special bank account require at least two levels of written recommendation and approval.)

Landau does not contend that Ellis ever saw or approved the guarantee letters issued by Harris and Johnson. She specifically denies approving the letters of the payments.[1]

Landau offers the affidavits of Harris and Johnson. Yet both men are careful to point out that their signatures on checks from the special account required "regional approval." They do not allege that any such approval was obtained. The conversations Harris contends he had were with district-level persons who did not have authority to approve payments.

## II. DISCUSSION

▮ Although the circumstances of Landau's claim are compelling, the law applicable to these circumstances does not create a remedy. Plaintiff's first theory— that there exists an express or implied-in-fact contract cannot be factually supported. In order for an express or implied-in-fact contract to be found, the officer whose conduct is relied upon must have actual authority to bind the Government by contract. *See Prudential Ins. of America v. United States,* 801 F.2d 1295, 1297 (Fed. Cir.1986), *cert. den.,* 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. den.,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *City of Alexandria v. United States,* 737 F.2d 1022, 1027 (Fed.Cir.1984); *Pacific Gas*

& *Elec. Co. v. United States,* 3 Cl.Ct. 329, 338–39 (1983), *aff'd,* 738 F.2d 452 (Fed.Cir. 1984).

The record establishes that although Harris and Johnson could countersign checks on the special account, they could not do so without first having obtained a prior written approval from Ellis for each withdrawal. In guaranteeing funds from the special account, Harris and Johnson had no authority to bind the Government. The law is clear that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

▮ Plaintiff's claim that there is a contract implied-in-law based on principles of promissory estoppel also fails. The Tucker Act, 28 U.S.C. § 1491 (1982), under which this court obtains jurisdiction over contract claims, does not extend to contracts implied-in-law. *Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *Penn Towne Builders, Inc. v. United States,* 4 Cl.Ct. 677, 682 (1984). Since the theory of promissory estoppel is based on principles implied in law, *Pacific Gas & Elec. Co. v. United States,* 3 Cl.Ct. at 340; *see also Martin J. Simko Constr., Inc. v. United States,* 11 Cl.Ct. 257 (1986), *vacated in part,* 852 F.2d 540 (1988); *Penn Towne Builders, Inc. v. United States,* 4 Cl.Ct. at 682, the court lacks jurisdiction over that claim. *Algonac Manufacturing Co. v. United States,* 192 Ct.Cl. 649, 674, 428 F.2d 1241, 1255–56 (1970); *City of Klawock v. United States,* 2 Cl.Ct. 580, 586 (1983), *aff'd,* 732 F.2d 168 (Fed.Cir.1984). It has been frequently held that neither this court nor its predecessor have jurisdiction over unjust enrichment claims based purely on equitable principles. *See, e.g., Merritt v. United States,* 267 U.S. 338, 341,

---

1. Instead, plaintiff contends that Harris discussed the propriety of the letters with the District Director of the Pittsburgh SBA office, and with legal counsel in that office. Defendant counters with affidavits from the relevant personnel denying such conversations occurred. This dispute does not preclude summary judgment. Even if Harris consulted those individuals, they were no more authorized than Harris to issue the guarantees.

45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *Aetna Cas. & Sur. Co. v. United States*, 228 Ct.Cl. 146, 164, 655 F.2d 1047, 1059–60 (1981); *Algonac Manufacturing*, 192 Ct.Cl. 649, 674, 428 F.2d at 1255–56; *Sanders–Midwest, Inc. v. United States*, 15 Cl.Ct. 345, 353 (1988).

■ Here, both Harris and Johnson overstepped their authority when they attempted to obligate the special account by guaranteeing future payment without first obtaining a written approval from Ellis. Plaintiff's attempt to discern apparent authority in Harris and Johnson also fails, because "[i]n government contracting it is not enough that a person may appear to have authority to enter into or amend an agreement, that person must actually have the requisite delegated authority to do so." *Martin J. Simko*, 11 Cl.Ct. at 275; *see also Emeco Industries Inc. v. United States*, 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973); *Lehner v. United States*, 1 Cl. Ct. 408, 415 (1983).

The cases cited by plaintiff to support its arguments that the Government may be estopped are distinguishable from the instant action. Those cases stand for the proposition that in some instances, particularly in the context of exercising proprietary functions, the Government can be equitably estopped from disavowing the actions or representations of legally authorized persons, despite the fact that the contract may not be in accordance with law. *See USA Petroleum Corp. v. United States*, 821 F.2d 622 (Fed.Cir.1987);[2] *Broad Avenue Laundry and Tailoring v. U.S.*, 231 Ct.Cl. 1, 681 F.2d 746 (1982); *Portmann v. United States*, 674 F.2d 1155, 1162 (7th Cir.1982).[3] It is critical to note two elements present in those cases, however. First, the existence of an agreement is not a fiction. There were facts showing that an agreement was in fact reached between the parties. Second, that agreement was reached between agents authorized to contract. The critical missing element for Landau here is that the representatives were not authorized. As the Court of Claims iterated in *Emeco*, 202 Ct.Cl. at 1015, 485 F.2d at 657, for estoppel to apply against the Government, the agent whose actions are relied upon must have been acting within the scope of his authority.

■ Plaintiff also cites dicta in *Chavez v. United States*, 15 Cl.Ct. 353 (1988), for the proposition that a government contractor may recover the cost of materials where a benefit has been conferred on the Government, perhaps even in the absence of authority in the government agent. The court in *Chavez* relied exclusively on *United States v. Amdahl*, 786 F.2d 387 (Fed. Cir.1986), which holds that equitable relief may be granted under certain circumstances when a contractor has entered into an illegal contract with the Government. *Am-*

---

**2.** Although the issue of authority was not discussed in *USA Petroleum*, the court of appeals, in finding some of the elements of equitable estoppel present, did point to a pattern of events suggesting knowledge by "appropriate staff." 821 F.2d at 623.

**3.** *George H. Whike Constr. Co. v. United States*, 135 Ct.Cl. 126, 140 F.Supp. 560 (1956) is not to the contrary. The court there found that the Government was estopped to deny a contract entered into when the contractor relied on representations of lawyers for the contracting officer. The court found sufficient facts to warrant a conclusion that the lawyers were authorized to act for the agency. The court certainly did not create an exception to the requirement of authorization. Indeed it holds: "We are aware of the requirement that any representative must have authority to bind the Government and we are in full accord with the necessity of such a limitation." *Id.* at 131, 140 F.Supp. at 563. None of the decisions subsequent to *Whike* interpret it to create an exception.

The case of *United States v. Bissett–Berman Corp.*, 481 F.2d 764 (9th Cir.1973) is also distinguishable. Involved there was a stipulation of dismissal of a lawsuit. The Government attempted to disavow the stipulation on the grounds of lack of authority. The court rejected the argument on two grounds; first that the opposing party was entitled, in a lawsuit, to rely on the actions of opposing counsel; and second, because there was in fact evidence that the contracting officer had approved the stipulation. In *Dana Corp. v. United States*, 470 F.2d 1032, 1045, 200 Ct.Cl. 200, 220 (1972), the court found actual authority in the contracting officer to take the actions in question.

*dahl* is distinguishable, however, from the present case and can be traced to precedent discussed above. The case was before the Court of Appeals for the Federal Circuit after a decision by the General Services Board of Contract Appeals ("GSBCA"). The GSBCA had invalidated a contract for sale of computer equipment from the Federal Home Loan Mortgage Corporation to the Treasury Department. The contract called for a $1.2 million initial payment by Treasury before physical receipt of any equipment. *Amdahl* did not involve a question of lack of authority. The contracting officer had authority to enter into contracts. The GSBCA held that the contract was illegal, however, because it improperly permitted partial payment for equipment upon signing of the contract, but before any actual delivery. That feature of the contract was in violation of 31 U.S.C. § 3324(a) (1982), disallowing payments under those circumstances in excess of "the value of the ... article already delivered."

The GSBCA held the contract void *ab initio,* and ordered return of the $1.2 million to Treasury. In doing so it had to construe a code provision unique to it's function of reviewing challenged awards pursuant to the Brooks Act. Pub.L. No. 89–306, 79 Stat. 1127 (1965) (codified as amended at 40 U.S.C. § 759 (1982)). Section 759(h)(6)(B) ("section (6)(B)") provides that if the GSBCA revokes a procurement after award, "the affected contract shall be presumed valid as to all goods or services delivered and accepted under the contract...." The GSBCA found that acceptance had not occurred, and that section (6)(B) did not apply. The court reversed in part, first finding that section (6)(B) applied because there had been acceptance of the computer equipment. The court went on to state that section (6)(B) in effect preserves existing judicial precedent with respect to remedies in the event of rescission of a contract due to illegality. That precedent, the court held, permits a court to judge whether the circumstances surrounding the

illegality permit enforcement of the contract implied in fact. If the contract is void *ab initio,* and if conforming goods have been delivered by the contractor and accepted by the Government, then the contractor is entitled to payment for those goods on a quantum meruit or quantum valebant theory. If the contractor did not contribute to the mistake and was not on notice that the procedures being followed were wrong, then the contract is "deemed valid" and can only be terminated for convenience. The court found, contrary to the GSBCA, that delivery had taken place, and that section (6)(B) applied. It therefore vacated the Board's determination as to return of the first payment, yet precluded Treasury from making further payment.

This brief recitation makes clear why *Amdahl* is inapplicable here. While the present case is similar to *Amdahl,* it is at least one step removed. In *Amdahl* a contract was in fact entered into by persons authorized to represent their principals. The contract was later *rescinded* as illegal by GSBCA. The agency had knowingly entered into the agreement and, per the court of appeals, accepted valuable goods and services. The present case is different in that there was no underlying agreement in fact by authorized representatives. While *Amdahl* recognizes that illegality of the terms of a contract is a form of lack of authority, and that the contractor assumes the risk of lack of actual authority in the agency to enter into the contract, it nevertheless only identifies an exception to the rule of total governmental non-liability in circumstances of rescission for illegality. Although the distinction may seem more one of degree than kind, the degree is significant. In the one instance both parties are, presumably in good faith,[4] agreed on the terms of a contract and have begun performance. It is only later that an unanticipated legal obstacle to performance arises. In the other, the persons legally charged to represent the Government have

---

4. *Cf. New England Tank Industries v. United States,* 861 F.2d 685 (Fed.Cir.1988).

never acted. The potential for abuse is obviously much greater in the latter circumstance. In any event, given the overwhelming array of precedent which has not permitted recovery under conditions like those here,[5] the court declines to interpret *Amdahl* as extending beyond the circumstances described above.

**5.** See the cases cited at pages 37–38, *supra.*

## III. CONCLUSION

Defendant's motion for summary judgment is granted. The Clerk is directed to dismiss the complaint. No costs.