**H. LANDAU & COMPANY,**
**Plaintiff–Appellant,**

*v.*

**The UNITED STATES,**
**Defendant–Appellee.**

**No. 89–1199.**

United States Court of Appeals,
Federal Circuit.

Sept. 18, 1989.

As Amended on Grant of Rehearing
Dec. 11, 1989.

Ruth E. Ganister, Rosenthal and Ganister, West Chester, Pa., argued, for plaintiff-appellant.

Stephen J. McHale, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellee; with him on the brief were John R. Bolton, Asst. Atty. Gen. and David M. Cohen, Director.

Before MARKEY, Chief Judge, and NEWMAN, and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

H. Landau & Co. (Landau) appeals the United States Claims Court's judgment granting the government's summary judgment motion and dismissing the complaint. *See H. Landau & Co. v. United States*, 16 Cl.Ct. 35 (1988). We vacate and remand.

## BACKGROUND

In 1983, the Defense Personnel Support Center (DPSC), pursuant to Section 2[8](a) of the Small Business Act, 15 U.S.C. § 637(a) (1982 & Supp.V 1987), contracted with the Small Business Administration (SBA) to supply 25,000 sleeping bags. SBA then subcontracted with Carilee, Inc. to supply and deliver the bags to DPSC for $3,613,125. The subcontract provided that "the responsibility for administering this subcontract has been delegated to the [Defense Logistics Agency (DLA) office in Pittsburgh] and that [Carilee] will honor directions of any requests for changes by that [office] in like manner as if issued by SBA."

A modification to the subcontract provided Carilee with advance financing of $1,139,000 and required that any advance payments be made through a joint bank account requiring for withdrawals the signatures of both an authorized SBA representative and an authorized Carilee representative. Robert Harris and Earl Johnson of the Pittsburgh office were designated as the authorized SBA countersignatories although neither was the contracting officer (CO) who entered into the DPSC contract on SBA's behalf. An internal SBA operating procedure, however, required that the CO review any requested disbursements from the account and approve, in writing, the countersigning of any withdrawals.

Carilee began fulfilling the contract and placing orders for cloth with Landau, a textile converter. Due to Carilee's unstable financial situation, Landau was reluctant to extend credit to Carilee. To allay Landau's concern, Harris informed Landau that SBA would provide letters guaranteeing payment of each order, provided adequate funds to cover each invoice existed in the joint bank account at the time letters were to be issued. SBA's counsel and Pittsburgh district director assured Harris that he had the authority to issue such letters under the agreed upon terms. In fact, SBA's law department assisted in drafting and/or approving the specific language used in the letters of guarantee.

The first SBA letter guaranteed payment of about $250,000 for Carilee's initial lots of cloth and was executed by Harris. After delivering the lots and submitting the invoices, Landau was paid in full by checks drawn on the joint account. Harris, on SBA's behalf, issued two more letters, guaranteeing a total of $268,135.78. Another letter, guaranteeing $122,834.30, was

issued by Johnson with Harris's approval. Landau delivered $390,970.08 worth of cloth in reliance upon the later three letters. Although SBA was paid in full by DPSC for the sleeping bags, Landau received only $266,568.75 for the cloth delivered under those letters of guarantee. Landau sued the United States, demanding the unpaid balance of $124,401.33.

Landau contended that an express or implied-in-fact contract with the government required payment of the monies. The Claims Court disagreed and held that neither Harris nor Johnson had actual authority to bind the government because the CO's approval was required before either could countersign checks drawn on the joint account. *H. Landau,* 16 Cl.Ct. at 37.

## ISSUE

Whether the Claims Court erred in granting summary judgment and holding that no contract existed between Landau and SBA because Harris and Johnson lacked the authority to obligate the government to guarantee payments.

## OPINION

■ To recover for breach of an express or implied-in-fact contract with the United States, Landau must show "that the officer whose conduct is relied upon had actual authority to bind the government in contract." *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). Although apparent authority will not suffice to hold the government bound by the acts of its agents, *see Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), implied actual authority, like expressed actual authority, will suffice. *Cf. Branch Banking & Trust Co. v. United States,* 98 F.Supp. 757, 766, 120 Ct.Cl. 72 (explaining that "an officer authorized to make a contract for the United States has the implied authority thereafter to modify the provisions of that contract particularly where it is clearly in the interest of the United States to do so"), *cert. denied,* 342 U.S. 893, 72 S.Ct. 200, 96 L.Ed. 669 (1951).

"Authority to bind the [g]overnment is generally implied when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee." J. Cibinic & R. Nash, *Formation of Government Contracts* 43 (1982); *see also United States v. Bissett–Berman Corp.,* 481 F.2d 764, 768–69 (9th Cir.1973) (holding that the government's attorney had the implicit authority to bind the government although the CO had the expressed authority).

Here, the Claims Court focused solely on whether Harris and Johnson had the express authority to bind the government. Noting that prior written approval was required before checks drawn on the joint account could be signed, the Claims Court found the requisite authority lacking. The court failed to consider whether Harris and Johnson had the implicit authority to obligate SBA to guarantee the payments.

■■ The SBA–Carilee subcontract required Carilee to treat requests from the Pittsburgh DLA office as if issued by the SBA and granted responsibility for the subcontract's administration to that office. Part of that responsibility certainly included the duty to see that the subcontractor acquired the necessary raw materials to fulfill its obligation under the contract. That duty, coupled with the authority to draw checks on the joint bank account, may have carried with it the implicit authority to assure suppliers that they would be paid for providing the materials. Because the Claims Court did not reach this issue, we remand rather than decide it ourselves. If the Claims Court finds that such implicit authority existed here, Landau has established the actual authority required to bind the government.

## COSTS

Each party is to bear its own costs.

**VACATED AND REMANDED.**