**Alexey T. ZACHARIN, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 93–186C.**

United States Court of Federal Claims.

Jan. 3, 1996.

Robert H. Koehler, Washington, D.C., for plaintiff. William O. Geny, Portland, Oregon, of counsel.

Grace Karaffa, Civil Division, Department of Justice, Washington, D.C., with whom were Frank W. Hunger, Assistant Attorney General, Vito J. DiPietro, Director, for defendant. John Fargo, Assistant Director, of counsel.

*OPINION*

MARGOLIS, Judge.

This patent case is before the court on cross-motions for summary judgment. Plaintiff seeks to enforce in this court, by collateral estoppel, the Commissioner of Patents' determination of invention rights, which granted plaintiff full ownership of the patent at issue. In addition, plaintiff asks this court to give legal effect to the Memorandum for Record executed in conjunction with the express, irrevocable, royalty-free license in the invention he gave to the government. Defendant contends that the court should give no legal effect to either the Memorandum for Record or the Commissioner's prior decision. After careful consideration and hearing oral argument, the court denies plaintiff's motion for partial summary judgment and grants defendant's cross-motion for summary judgment.

**FACTS**

Plaintiff, Alexey T. Zacharin, is a civilian mechanical engineer employed by the United States Army at Picatinny Arsenal in New Jersey. From 1974 to 1983, Zacharin was assigned to work on the 2.75" Multipurpose Submunition Project, where he was responsible for designing the fuze for the submunition. In order for the fuze to operate, it required a ram-air inflatable decelerator ("RAD"). Zacharin invented the RAD, which resulted in United States Patent No. 4,565,341 ('341 patent), issued on January 21, 1986. The '341 patent was based upon Application No. 305,010, which was filed and prosecuted by the Army on September 24, 1981.

In order for the Army to prosecute a patent, it must have a legal interest in the application. Thus, on September 21, 1981, Zacharin executed an express, royalty-free, irrevocable license in favor of the government. The express license was a standard government form that required *only* Zacharin's signature. He did so despite an ongoing administrative Determination of Invention Rights and his belief that the government had no rights in his invention. However, fearful of a statutory bar, Zacharin wanted the application to be filed as soon as possible. In an effort to allay Za-

charin's concerns, Harold Card, Chief Patent Counsel at Picatinny Arsenal in New Jersey, drafted a memorandum in which Zacharin could memorialize his intentions and reserve his rights. As a result, both he and Card signed a Memorandum for Record stating that should the government have no license right as a result of the Determination of Invention Rights, then the express license could be cancelled, so long as Zacharin repaid the costs associated with the preparation and filing of the application. The Memorandum for Record was executed simultaneously with the express license.

The Army's Determination of Rights determined that the invention was owned by Zacharin, but that the government was entitled to a non-exclusive, royalty-free license in the invention. Zacharin appealed this decision to the Commissioner of Patents and Trademarks under the procedures set forth in Executive Order ("Exec.Ord.") 10096. In an April 30, 1985 Determination of Government Interest, the Commissioner reversed the Army, ruling that Zacharin did own the invention and that the government was not entitled to a royalty-free license. On August 21, 1986, the Army filed a motion for reconsideration. This appeal, however, was denied as untimely. *In re Zacharin,* 1 U.S.P.Q.2d 1413 (Cmm'r Patents 1986).

Pursuant to the terms of the Memorandum for Record, Chief Patent Counsel Card presented Zacharin with a $2,162.30 bill for the services of the government attorneys who prosecuted Zacharin's patent application. Zacharin tendered a check to defendant for that amount on May 28, 1986. On December 22, 1986, the Army returned Zacharin's check uncashed, with an accompanying letter disavowing the terms of the Memorandum for Record.

**DISCUSSION**

Plaintiff moves for partial summary judgment, asserting that a) the Commissioner of Patents' Determination of Government Interest, which vested title in the '341 patent with Zacharin, precludes this court from re-examining this issue by virtue of collateral estoppel, and b) the Memorandum for Record is

valid and should be enforced, or in the alternative, that the express license should be voided under the doctrine of mistake. Defendant cross-moves for summary judgment, asserting that a) the Commissioner's decision is entitled to no preclusive effect in this forum, and b) the Memorandum for Record is invalid, and the express license is valid and enforceable on its face. This court agrees with the defendant.

### I. Collateral Estoppel

█ "Under the doctrine of issue preclusion, traditionally called 'collateral estoppel,' issues which are actually and necessarily determined by a court of competent jurisdiction are normally conclusive in a subsequent suit involving the parties to the prior litigation." *Acacia Villa v. United States*, 24 Cl. Ct. 445, 448 (1991) (quoting *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1090 (Fed.Cir.1984)). The policy behind such a doctrine "is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again." *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983). The basic requirements for issue preclusion are:

> (1) the issues to be concluded are identical to those involved in the prior action; (2) in that action the issues were raised and "actually litigated"; (3) the determination of those issues in the prior action was necessary and essential to the resulting judg-

ment; and (4) the party to be precluded ... was fully represented in the prior action.

*Id.* Federal administrative hearings are entitled to issue preclusive effect when the agency "is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

█ Defendant argues that, based on the facts of this case, the Commissioner of Patents was not acting in the "judicial capacity" contemplated by *Utah Construction* and its progeny, and that his decision should therefore not be given preclusive effect in these proceedings. Defendant contends that the Commissioner's decision lacks the basic procedural safeguards required for the application of collateral estoppel in this forum, because it was based on a written record that was assembled without adversarial discovery, the application of the Federal Rules of Evidence, or the opportunity for live cross-examination of witnesses under oath.[1] In an effort to show that these shortcomings caused it prejudice, the government claims numerous factual inconsistencies between the written record before the Commissioner and the documents and depositions discovered as a result of this lawsuit. As a result, the government claims the Commissioner's procedures robbed it of a full and fair opportunity

---

1. Once an agency makes an initial determination of rights in favor of the government, the government must prepare a written statement which outlines the reasons for the agency's decision. 37 CFR § 100.6(c)(3) (1985). At this point, an aggrieved employee may seek "a review of the agency determination by filing, within 30 days ... an appeal with the Commissioner." *Id.* at § 100.7(a). All filings with the Commissioner of Patents must also be served on the opposing party. *See id.;* § 100.7(b) and (b)(2). The agency then files a report with the Commissioner containing:

> (1) A copy of a statement by the agency containing the information specified in § 100.6(c), and
> (2) A detailed statement of the points of dispute or controversy, together with ... any statements or written arguments filed with the agency, and ... any other relevant evidence that the agency considered in making its deter-

mination of Government interest. Within 25 days ... the employee may file a reply ... with the Commissioner....
*Id.* at § 100.7(b). After the inventor's reply, and if so requested in his appeal, "a date will be set for the hearing of oral arguments" by the employee (or his attorney) and the agency, with each side limited to thirty minutes. *Id.* at § 100.7(c). After the hearing, if there is one, the Commissioner issues a decision, "which ... shall be final after the period for asking the reconsideration [30 days from the date of the decision] expires.... The Commissioner's decision shall be made after consideration of the statement of facts in the employee's appeal, the agency's report, and the employee's reply, but the Commissioner, at his discretion ... may call for further statements on specific questions of fact or may request additional evidence in the form of affidavits or dispositions [sic] on the specific facts in dispute." *Id.* at § 100.7(d).

to litigate its case. *Cf. General Dynamics Corp. v. United States,* 214 Ct.Cl. 607, 558 F.2d 985, 992 (1977) (Allowing an adverse agency decision to collaterally estop the government "[a]bsent some demonstration that the proceeding was defective, substantially prejudicing defendant's ability to present its case fully and fairly."); *Bowen v. United States,* 570 F.2d 1311, 1322 (7th Cir.1978) ("[T]he rules of issue preclusion should not be inexorably applied when a fair opportunity to litigate the issue in the prior proceeding was lacking.").

### a. Judicial Capacity

"In determining whether the administrative agency was 'acting in a judicial capacity,' no single model of procedural fairness is dictated by the due process clause. Rather, we must look to our prior cases" to make this determination. *Amoco Prod. Co. v. Heimann,* 904 F.2d 1405, 1415 (10th Cir.), *cert. denied,* 498 U.S. 942, 111 S.Ct. 350, 112 L.Ed.2d 314 (1990) (citations omitted). The agency in *Utah Construction* had acted in a judicial capacity by holding a "full-dress adversary proceeding, with testimony, cross-examination, exhibits, briefs and argument." *Nasem v. Brown,* 595 F.2d 801, 807 (D.C.Cir. 1979). In *Nasem,* however, the D.C. Circuit refused to apply issue preclusion to an Office of Federal Equal Employment Opportunity discrimination hearing that did not provide for live witness testimony. *Id.* The lack of live testimony was particularly disturbing because a discrimination hearing "necessarily turns largely on retaliatory motivation, and thus demands that the decision-maker weigh witness credibility." *Id.* (citation omitted). The court was also troubled by the parties' inability to cross-examine opposing witnesses at the agency hearing. *Id.*

In *EZ Loader Boat Trailers, Inc, v. Cox Trailers, Inc.,* 746 F.2d 375, 378 (7th Cir. 1984), however, the Seventh Circuit applied collateral estoppel to a Trademark Trial and Appeal Board ("TTAB") trademark opposition proceeding despite the fact that the TTAB did not hear live testimony from witnesses. The TTAB received deposition testimony from both parties as well as rebuttal testimony from the trademark opponent. In

this regard, the court noted that "EZ fails to disclose how its case was affected in any way by the Board's reliance on deposition testimony submitted by the parties, much less how it was disadvantaged by that method." *Id.* Also supporting the court's decision were the facts that the TTAB hearing was an adversarial proceeding, that both parties were represented by counsel and presented evidence and submitted briefs, and that EZ obtained judicial review of the TTAB decision. *Id.*

In a more recent case, however, the Seventh Circuit stated:

An agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) *pretrial discovery,* (3) the opportunity to present memoranda of law, (4) *examinations and cross-examinations at the hearing,* (5) the opportunity to introduce exhibits, (6) *the chance to object to evidence at the hearing,* and (7) final findings of fact and conclusions of law.

*Reed v. AMAX Coal Co.,* 971 F.2d 1295, 1300 (7th Cir.1992) (emphasis added). *See also Long v. Laramie County Community College Dist.,* 840 F.2d 743, 751 (10th Cir.), *cert. denied,* 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988) (giving a state college grievance committee's findings issue preclusive effect in a subsequent § 1983 action where the parties before the committee were represented by counsel, witnesses were cross-examined, documentary evidence was introduced in accordance with the Wyoming Administrative Procedures Act and the committee rendered findings and recommendations which were reviewed by the college's Board of Trustees).

Thus, the weight of authority suggests that when the party to be estopped can demonstrate that the procedures below prejudiced its ability to fairly prosecute its case, issue preclusion should not be applied. With the exception of *EZ Loader,* all cases cited which have found an agency acting in a judicial capacity involved agency actions which included the examination and cross-examination of live witnesses. As previously noted, however, the *EZ Loader* plaintiff failed to demonstrate that it was prejudiced by such a

deficiency. *See EZ Loader,* 746 F.2d at 378. Defendant in this case, however, has cited a number of instances in which, through pretrial discovery, defendant has discovered that Zacharin has changed his version of the events or otherwise explained previous statements submitted to the Commissioner in such a way that, had these statements been before the Commissioner, this court cannot say with certainty that these "new" statements would not have had significant legal consequences. As a result, defendant has adequately demonstrated that the lack of adversarial pretrial discovery, and its inability to examine and cross-examine live witnesses before the Commissioner, were such significant procedural defects that the Commissioner did not act in a judicial capacity in this instance. The Commissioner's decision shall therefore not be given preclusive effect by this court.

Plaintiff argues that such a holding flies in the face of *Heinemann v. United States,* 4 Cl.Ct. 564, 570 (1984) (*"Heinemann I"*), in which this court found that the administrative process now at issue is "the sole avenue for determining rights in inventions made by government employees." In making this pronouncement, *Heinemann I* noted that "[t]o provide government employees with the choice of pursuing rights determinations either through their agencies or through this court, and to apply the separate standards of the executive order or the common law according to which forum they choose, would frustrate that purpose of the Executive Order" to establish uniformity within the field of government inventor rights determinations. *Id.*

*Heinemann I,* however, was not concerned with the collateral estoppel effect that an agency's determination of rights would have in this court. In that case, Heinemann brought suit in this court prior to a formal agency determination of rights proceeding. The *Heinemann I* court remanded the case back to the agency so that it could make a formal, administrative determination of rights. The *Heinemann I* court was concerned with eliminating forum shopping between the agency and the court, and the case stands for only the proposition that an ag-grieved plaintiff must exhaust all administrative remedies before seeking relief in court.

That is not the issue that now confronts this court. Here, there has already been a final agency action. *See In re Zacharin,* 1 U.S.P.Q.2d 1413. Plaintiff now asks this court to enforce this agency action as binding in these proceedings. However, despite plaintiff's claim that *Heinemann I* holds that this court is bound by the Commissioner's final decision, "the Congressional provision in section 1498 for actions in the Court of [Federal] Claims undercuts the contention that the Commissioner's decision is in fact 'final.' The respective rights of the Government and the inventor may be judicially determined, not on review, but de novo in that court in an action for compensation after a patent has issued." *Zimmerman v. United States,* 165 U.S.P.Q. 33, 36, 422 F.2d 326 (3rd Cir.), *cert. denied,* 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970).

Plaintiff also relies on *Heinemann v. United States,* 796 F.2d 451 (Fed.Cir.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 758 (1987) (*"Heinemann II"*), for the proposition that the Commissioner of Patents' determination of invention rights is given preclusive effect in this court. This case, however, is even less on point than *Heinemann I.* In *Heinemann II,* the Commissioner of Patents made a final determination of rights in favor of the government, and Heinemann appealed to the Claims Court. The government moved for summary judgment on the basis that Heinemann was neither the legal nor equitable owner of the patent at issue, and therefore was not entitled to bring suit under 28 U.S.C. § 1498. The Claims Court agreed, affirming the Commissioner's determination under either the "arbitrary or capricious" standard or the "substantial evidence" standard. On appeal, the Federal Circuit held that review of the case was proper under the Administrative Procedure Act ("APA"), and the court therefore reviewed the Commissioner's decision to determine whether it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. On the basis of this APA review, the Federal Circuit affirmed the Claims Court.

Unlike the instant case, the court proceeding in *Heinemann II* was not separate and distinct from the Commissioner's determination of rights. Rather, it was simply an APA appeal of an adverse agency decision. Nowhere in *Heinemann II* did the Federal Circuit address the preclusive effect a Commissioner's decision may or may not have in a new proceeding before this court. Therefore, based upon the facts of this case and the foregoing discussion, the Commissioner did not act in a "judicial capacity," and his decision is not entitled to preclusive effect in this forum.

## II. Memorandum for Record and Express License

Plaintiff asks this court to give legal effect to the Memorandum for Record he executed contemporaneously with his signing of the express license. He asserts that the two documents must be read together, because the parties intended both to encompass the terms of their bargain. Defendant, however, argues that the express license executed by plaintiff is a fully integrated document, and as such the Memorandum for Record has no legal effect by virtue of the parol evidence rule.

### a. Parol evidence

■ The parol evidence rule "is a rule of substantive law, not a rule of evidence, and what it prohibits is the use of external evidence to add to or otherwise modify the terms of a written agreement in instances where the written agreement has been adopted by the parties as an expression of their final understanding." *David Nassif Assocs. v. United States*, 214 Ct.Cl. 407, 557 F.2d 249, 256 (1977). Defendant argues that the express license is fully integrated on its face, and thus the introduction of parol evidence is barred. However, "it is not the writing alone which attests to its own finality and completeness but the circumstances surrounding its execution, including the negotiations which produced it." *Id.; see also Sylvania Elec. Prods., Inc. v. United States*, 198 Ct.Cl. 106, 458 F.2d 994, 1006 (1972) ("Parol or extrinsic evidence must be admissible on the issue of the extent to which a written

agreement is integrated, for as has been said, the writing cannot prove its own integration.").

Here, it is clear that the parties intended that the express license and the Memorandum for Record be read together as a full expression of their intentions. In his deposition, Harold Card, Chief Patent Counsel, U.S. Army Armament Munitions and Chemical Command in Dover, New Jersey, who drafted the Memorandum for Record, stated that the memorandum memorialized the intentions of both he and Zacharin. *See* Card dep. at 72–74. Therefore, because the parties so intended, the Memorandum for Record will be read in conjunction with the express license. *Cf. Brown v. Financial Serv. Corp., Int'l*, 489 F.2d 144, 149 (5th Cir.1974) (holding that the trial court erred when it failed to include a cover letter as part of the parties' stock purchase agreement).

### b. Implied actual authority

■ Defendant argues that Card lacked the authority to bind the government to the terms of the Memorandum for Record, thereby nullifying any legal effect plaintiff might ascribe to it. The court finds that Card lacked the express authority to bind the government to the terms of the Memorandum for Record. Army Regulation No. 27–60, Chapter 9–3 (1974) provides that the Chief, Patents Division, Office of the Judge Advocate General, Department of the Army, Washington, D.C., has the sole authority to consider and procure a license or assignment on behalf of the Department of the Army. However, plaintiff argues that Card, by virtue of his position as Chief Patent Counsel, had the necessary implied actual authority to bind the government to the terms of the Memorandum for Record.

It is well settled that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power." *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1,

3, 92 L.Ed. 10 (1947). Thus, while apparent authority cannot serve to bind the government to the acts of its agents, "implied actual authority, like expressed actual authority, will suffice." *H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir.1989). Implied actual authority exists "when such authority is considered to be an integral part of the duties assigned to a government employee." *Id.* (citation omitted). The burden of proof rests with plaintiff, however, in its assertion that Card had actual implied authority to bind the government to the terms of the Memorandum for Record. *Jackson v. United States,* 216 Ct.Cl. 25, 573 F.2d 1189, 1197 (1978); *Lehner v. United States,* 1 Cl. Ct. 408, 415 (1983).

Card's duties as Chief Patent Counsel included advising the Army on patent matters, and the initiation of inventor's patent applications and government determinations of right in such inventions. Card suggested and drafted the Memorandum for Record. Card was not, however, vested with the express authority to contractually bind the government. He testified that both he and plaintiff were aware of this limitation on his authority at the time that he drafted the Memorandum for Record.

Plaintiff does not claim that the Memorandum for Record is itself a binding contract. Rather, the plaintiff asserts that the court merely need hold that, based upon Card's official duties, he was vested with the implied actual authority to bind the government to its terms. This the court declines to do. To hold that the government is bound by the terms of the Memorandum for Record would be tantamount to holding that Card had the implied actual authority to contract on behalf of the government. Clearly this is not so. *See Essen Mall Properties v. United States,* 21 Cl.Ct. 430, 444–446 (1990) (no implied authority to bind the government to an implied contract where official had no contracting officer's authority); *Howard v. United States,* 31 Fed.Cl. 297, 314 (1994) (same). Therefore, because Card lacked the implied actual authority to bind the government, the government is not bound by the terms of the Memorandum for Record.

Plaintiff places great emphasis upon *George H. Whike Construction Co. v. United States,* 135 Ct.Cl. 126, 140 F.Supp. 560 (1956), for the proposition that an attorney can have the implied actual authority to bind the government to altered contract terms. *Whike,* however, does not help plaintiff's case.

In *Whike,* the plaintiff bid on a contract in the Canton, Ohio area. Because of World War II, there was a labor shortage. The government response was Exec.Ord. 9301, which increased the minimum wartime work week from 40 to 48 hours. Exec.Ord. 9301, however, was not in effect in Canton at the time of the bidding. Plaintiff, concerned that Canton might become subject to Exec.Ord. 9301, qualified its bid by stating that it expected to be reimbursed for the extra costs that would accompany Exec.Ord. 9301. When the government refused to change the terms of the contract to protect it, plaintiff requested a letter from the contracting officer ("CO") assuring it of reimbursement. Plaintiff requested this letter because it "had heard of another Canton contractor who had signed a contract … about a week before and had received a letter from the Government protecting it against the effects of Executive Order 9301." *Id.* at 128, 140 F.Supp. 560. The CO on that contract was the same CO on Whike's contract. However, plaintiff could not get such a letter because the CO was unavailable. Instead the CO's lawyers assured plaintiff that the qualification in its bid would suffice. These assurances were given in lieu of the letter. After plaintiff entered the contract, Exec.Ord. 9301 was extended to Canton, and the government refused to reimburse plaintiff for its increased costs.

The Court of Claims held for the contractor, binding the government to the assurances given by its lawyers.

These assurances were made by the lawyers in the regional office of the [contracting agency] during the temporary absence of the contracting officer. The lawyers were from the Legal Department of the regional office, whose director was the contracting officer. The contracting officer returned later that day, after plaintiff had

executed the contract, and signed it on behalf of the [agency]. This same contracting officer had given written assurances to another Canton contractor that he would be reimbursed in case Executive Order 9301 became applicable in the Canton area. This fact was known to plaintiff's representatives.

*Id.* at 130, 140 F.Supp. 560. In view of all these circumstances, the court concluded that the assurances given to plaintiff had the effect of binding the Government.

*Whike,* however, is not analogous to the instant case. Card is not associated with the legal department of the regional office. Furthermore, he had never before executed a document similar to the Memorandum for Record. Moreover, he had no prior knowledge that his procedure was an accepted practice by his superiors, nor was he acting as the official representative of a contracting officer who had previously approved of such agreements. In short, Card's alleged implied actual authority is not similar to that of the government lawyers in *Whike,* and consequently Card does not have the authority to bind the government to the Memorandum for Record.

### c. Equitable estoppel

■ Plaintiff asserts that, in the absence of Card's implied actual authority, the government should be equitably estopped from disavowing the terms of the Memorandum for Record.

The common law doctrine of equitable estoppel requires that

(1) the party to be estopped must know the facts, (2) the party to be estopped must intend that his conduct be acted on or must act so that the party asserting the estoppel has a right to believe it is so intended, (3) the party asserting estoppel must be ignorant of the facts and (4) the party asserting estoppel must rely on the other party's conduct to his injury.

*Peters v. United States,* 28 Fed.Cl. 162, 168 (1993).

However, in addition, "it is well settled that the Government may not be estopped on the same terms as any other litigant." *Id.* at

169 (quoting *Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984)). As a result, "plaintiff [must also] prove that the official whose act(s) is relied upon had the requisite authority." *Hazeltine Corp. v. United States,* 10 Cl.Ct. 417, 440 (1986), *aff'd,* 820 F.2d 1190 (Fed.Cir.1987); *Miles Farm Supply, Inc. v. United States,* 14 Cl.Ct. 753, 757 (1988); *Howard v. United States,* 31 Fed.Cl. 297, 314 n. 13 (1994). Since Card did not have the authority necessary to bind the government to the terms of the Memorandum for Record, plaintiff cannot show that equitable estoppel is applicable.

### d. Mistake

■ Plaintiff argues that, when he executed the express license, Card's authority to bind the government to the terms of the Memorandum for Record was a basic assumption of the parties (or at least Zacharin), and that therefore the license is now voidable by plaintiff.

The Federal Circuit has stated the law of mutual mistake:

[W]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party *unless he bears the risk of mistake under the rule stated in* [Restatement (Second) of Contracts] § 154 [1981].

*Burnside–Ott Aviation Training Center v. United States,* 985 F.2d 1574, 1581 (Fed.Cir. 1993) (emphasis in the original). Section 154 of the Restatement (Second) of Contracts assigns the risk to a party when the agreement so specifies, when the party recognizes its knowledge of the facts giving rise to the mistake is limited but acts anyway, or when the court deems it reasonable in the circumstances to do so. *Id.*

Similarly, this court has recognized that:

Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the

contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or b) the other party had reason to know of the mistake or his fault caused the mistake. *Meek v. United States,* 26 Cl.Ct. 1357, 1362 (1992), *aff'd,* 6 F.3d 788 (Fed.Cir.1993) (*quoting* Restatement (Second) of Contracts § 153 (1981)).

Thus, whether plaintiff's mistake as to Card's authority was mutual or unilateral, plaintiff may void the express license only so long as the risk of mistake does not rest with him. Plaintiff asserts that none of the three reasons enumerated in § 154 are applicable here. However, *Federal Crop Ins. Corp.,* 332 U.S. at 384, 68 S.Ct. at 3, places upon parties dealing with the government the risk of loss should they rely upon an official who exceeds the scope of his authority. Therefore, since Card exceeded the scope of his authority, the risk of loss rests with plaintiff, and plaintiff cannot use the doctrine of mistake to void the express license.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is denied, and defendant's cross-motion for summary judgment is granted. The clerk shall enter judgment for the defendant and dismiss the complaint. No costs.