**CONSTRUCTION EQUIPMENT LEASE COMPANY, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 92–88C.**

United States Claims Court.

May 15, 1992.

---

Rick L. Thomas, Lexington, Ky., for plaintiffs.

Steven J. Abelson, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, for defendant. Tara D. Campbell, Dept. of the Interior, Office of the Sol., of counsel.

## ORDER

ANDEWELT, Judge.

In this government contract action, plaintiffs, Construction Equipment Lease Company (CELCO) and Judd Construction Company (Judd), seek payments pursuant to a contract between Judd and the United States Department of the Interior, Office of Surface Mining (OSM). This action is presently before the court on defendant's motion for partial summary judgment. For the reasons set forth below, defendant's motion is granted as to Count III of plaintiffs' second amended complaint, and Count IV is dismissed for lack of jurisdiction.[1]

## I.[2]

In June 1983, OSM solicited bids for a contract covering the extinguishment of an abandoned, burning refuse pile in Kodak, Kentucky. In July 1983, OSM awarded the contract to Judd, based on a bid signed by its "owner," Billy H. Judd. The contract required Judd to (1) clear and "grub" the refuse pile and waste area; (2) cool, excavate, and dispose of burning refuse material; (3) place a covering over the refuse; and (4) regrade, restore, and revegetate all disturbed areas. Judd subcontracted with CELCO to perform the contract work and,

in turn, CELCO hired Billy H. Judd as the project supervisor.

On November 9, 1983, Judd stopped work on the project. In a letter to the contracting officer dated November 29, 1983, Judd explained: "The subject job was shut down November 9, 1983, primarily due to lack of operating funds." In that same letter, Judd further stated:

Even though the job has been plagued with many problems, drought, vandalism, arson, theft, inadequate repair resulting in unnecessary loss of equipment and man-hours, etc., ... by far the most costly is with interpretations and changes of the specifications. Limitations and/or restrictions placed on disposal of the refuse is the most costly.

Approximately seven months later, on June 12, 1984, OSM issued a modification to the contract. Plaintiffs thereafter resumed work.

On June 12, 1986, Judd submitted to the contracting officer a certified claim requesting an equitable adjustment in the amount of $369,201.16. The claim stated, in pertinent part:

### II.

That sometime during October of 1983, a material dispute arose between the contractor and the United States based upon a question as to the volume of refuse that had been removed by that time by the contractor ... and;

### III.

That because of said dispute ... the payments for ongoing work ... were suspended, forcing the contractor to cease operations, for lack of operating capital at that time ... and;

\*     \*     \*     \*     \*     \*

### V.

That upon completion of [a government] survey, and after 34 weeks of cessation of operations, it was revealed that

---

1. Defendant also seeks summary judgment on Count I of the complaint. Count I will be evaluated in a separate order.

2. The facts material to resolving defendant's motion for summary judgment on Counts III and IV are not in dispute.

the contractor had indeed removed some 3,000 more cubic yards of refuse than had been thought by the Government, and therefore the reason for the prior cessation of payments and subsequent cessation of work, was revealed to be entirely outside of the control of the contractor and without any fault whatsoever upon his part and;

### VI.

That because of said cessation of payments under the contract and the subsequent cessation of work because thereof, the contractor suffered losses which [it] has fully enumerated in [an] attached schedule....

In subsequent discussions between plaintiffs and OSM, both parties apparently considered the June 12, 1986, claim for $369,-201.16 as involving three distinct claims. First, plaintiffs sought $291,341.16 for costs incurred during the seven months plaintiffs had stopped work. These costs included, for example, costs relating to keeping machinery on the contract site and available for work during the stop-work period. Second, plaintiffs sought $7,680 for additional work allegedly performed by the contractor. And third, plaintiffs sought $70,000 on the ground that OSM had improperly refused to permit plaintiffs to dispose of the refuse at certain sites chosen by plaintiffs.

In a February 11, 1987, decision, the contracting officer denied plaintiffs' three claims except for $4,320 of the second claim. As to the first claim, the contracting officer concluded that plaintiffs were not entitled to costs incurred during the stop-work period. The contracting officer explained: "This agency maintains the position that the contractor was fully paid for all work completed at the time he chose to arbitrarily cease work because of alleged lack of working capital." The contracting officer further concluded that "all costs associated with the contractor's total down time cannot be paid for by the Government, as the contractor's shut down was of his own making and not due to fault of the Government." As to the third claim, to the

effect that OSM had improperly refused to allow plaintiffs to employ alternative disposal sites, the contracting officer concluded that the contract specifically identified a designated waste disposal site and that OSM had been justified in refusing to allow the alternative sites plaintiffs had proposed.

On February 11, 1988, CELCO filed the instant action, on Judd's behalf, challenging the contracting officer's February 11, 1987, decision. In a July 17, 1989, order, this court joined Judd as a real party in interest. *See Constr. Equipment Lease Co. v. United States*, 17 Cl.Ct. 628 (1989). The second amended complaint contains four counts in which Judd and CELCO seek equitable adjustments totalling $418,-142.39. In Count IV, plaintiffs contend that OSM violated the terms of the contract when, on October 21, 1985, it made a progress payment of $49,121.39 to Judd's account at the Citizens National Bank, Bowling Green, Kentucky. Judd did not present this allegation to the contracting officer in its June 12, 1986, claim and the contracting officer did not address this issue in his February 11, 1987, final decision on that claim. However, on November 27, 1989, plaintiffs submitted a separate claim to the contracting officer covering this allegation of a misdirected progress payment. The contracting officer denied the claim in a July 12, 1990, final decision.

### II.

Summary judgment is not a "disfavored procedural shortcut" but rather "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). The necessary procedures for such a disposition are well-established in case law and commentary. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); 6 J. Moore, W. Taggart, & J. Wicker, *Moore's Federal Prac-*

*tice* ¶ 56.01 *et seq.* (2d ed. 1992); RUSCC 56. In *Maki v. United States,* 13 Cl.Ct. 779, 781 (1987), this court summarized the applicable rules as follows:

> A grant of summary judgment is appropriate only where there is no genuine issue of material fact (*i.e.,* a fact that might affect the outcome of the suit) and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). See *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987). The moving party bears the burden of establishing the absence of any genuine issue of material fact. That burden may be discharged by pointing out to the Court that there is an absence of evidence to support the non-moving party's case, *i.e.,* an absence of evidence as to a material fact on which the non-movant bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). When the moving party successfully discharges its burden in this way, to defeat the summary judgment motion, the non-movant must present sufficient evidence as to the existence of that fact so that the trier of fact could reasonably find in favor of the non-movant. See *Liberty Lobby,* 106 S.Ct. at 2512. The Federal Circuit has delineated the non-moving party's burden in this respect as follows:
>
> > The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed.Cir.1984).
>
> *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1562–63 (Fed.Cir.1987) (quoting *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 626–27 (Fed.Cir.1984) ).

### III.

■ In Count III, plaintiffs seek $70,000 on the ground that OSM "unreasonably withheld permission to select and utilize" certain sites for disposal of refuse under the contract. Apparently, plaintiffs made various requests during the course of the contract to dispose of refuse at certain sites they believed were appropriate. In a formal contract modification after the stop-work period, OSM granted the request that plaintiffs be allowed to dispose of refuse in an adjacent ball field. OSM apparently informally granted certain other of plaintiffs' requests while it denied others. In Count III, plaintiffs seek costs that allegedly resulted from such informal denials.

In its summary judgment motion, defendant argues that the contract specifies the permissible disposal site and that there is no contractual provision that requires OSM even to consider the contractor's request for an alternative disposal site, much less to approve one. Defendant is correct. Paragraph 27.1 of the contract covers "Disposal of Refuse" and provides, as follows:

> Quenched refuse shall be disposed of in one of three methods:
>
> 1. loading refuse in trucks provided by government agency or others as authorized by the Engineer.
> 2. placing quenched refuse at *the designated waste area.*
> 3. placing quenched refuse on the refuse site during regrading operations.

(Emphasis added). The "designated waste area" referred to in the second alternative is depicted as a single site on the contract map and is described in the contract as being "located approximately 1¼ miles from the refuse pile in a hollow below an existing hollow fill."

To support their contention that, notwithstanding paragraph 27.1 of the contract, OSM was obliged to designate and authorize additional disposal sites, plaintiffs rely upon paragraphs 26.7 and 27.2 of the contract and on the contract modification in which OSM allowed plaintiffs to dispose of refuse in an adjacent ball field. But none of these provisions supports plaintiffs' position.

First, paragraph 26.7 provides:

*Off–Site Disposal of Refuse Material*

As authorized, the Contractor shall load quenched refuse materials from the refuse pile for other government agencies.

Paragraph 27.2 provides:

*Loading for Disposals by Others*

As authorized by the Engineer, the Contractor shall load quenched refuse for disposal by others. However, the Contractor shall not be compensated for loading refuse for parties not authorized by the Engineer.

Neither of these contract provisions suggests in any way that plaintiffs had a right to dispose of refuse at any site or in any manner not specifically authorized by OSM. Both provisions appear to relate to the first disposal option specifically listed in paragraph 27.1, *i.e.*, "loading refuse in trucks provided by government agency or others as authorized by the Engineer." Moreover, both provisions are predicated on the contractor receiving prior authorization from OSM employees for its actions. Here, OSM refused to authorize disposal at plaintiffs' proposed sites.

Second, a right to dispose of refuse at sites not specified in the contract cannot be inferred from defendant's agreeing to modify the contract to allow for disposal of refuse in an adjacent ball field. OSM's decision to allow this modification merely shows flexibility on its part. Certainly, agreeing to one modification of the contract cannot reasonably be interpreted to produce a contractual obligation to agree to other modifications or otherwise to permit use of alternative disposal sites not authorized in the contract.

▇▇▇ In their response to defendant's motion for partial summary judgment, and then more fully at oral argument, plaintiffs presented an alternative theory, not specifi-

cally alleged in the complaint, to avoid summary judgment on Count III. Plaintiffs contend that an OSM engineer had orally authorized additional disposal sites and that these discussions resulted in an implied-in-fact contract pursuant to which OSM agreed to approve additional disposal sites. But this alternative theory is deficient in at least two ways. First, an implied-in-fact agreement requires the same prerequisites as any other contract—an unequivocal offer and acceptance and consideration passing between the parties. *Fincke v. United States*, 230 Ct.Cl. 233, 244, 675 F.2d 289, 295 (1982). In their response to defendant's properly supported summary judgment motion, plaintiffs do not present an affidavit or any other evidence demonstrating the existence of the prerequisites for such an agreement. Rather, plaintiffs rely exclusively upon allegations made by counsel as to the existence of such an agreement. But as noted above, mere allegations of counsel are not sufficient to avoid a properly supported summary judgment motion. RUSCC 56(f);[3] *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed. Cir.1987).

▇▇▇ Second, in any event, to bind the federal government in contract, the agreement must be with an individual with actual authority to enter such a contract. *See, e.g., Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Jascourt v. United States*, 207 Ct.Cl. 955, 521 F.2d 1406 (1975). The "Changes Clause" of the instant contract grants the contracting officer the authority to modify the contract.[4] An August 8, 1983, OSM memorandum, which Billy H. Judd acknowledged, further specifies the exclusivity of that authority.[5] The on-site engineer

---

**3.** RUSCC 56(f) provides, in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If such party does not so

respond, summary judgment, if appropriate, shall be entered against such party.

**4.** The "Changes Clause" provides, in pertinent part: "(a) *The Contracting Officer* may, in writing, order changes in the drawings and specifications within the general scope of the contract" (emphasis added).

**5.** The August 8, 1983, memorandum from the contracting officer to Jerry Herndon, an OSM

was not the contracting officer and plaintiffs have not presented any evidence to suggest that the on-site engineer had requisite contracting authority, either through delegation from the contracting officer or otherwise. *See id.* at 956, 521 F.2d 1406.

In sum, in its summary judgment motion, defendant has properly supported its contention that it was under no contractual obligation to allow disposal of refuse at any site not specified in the written contract. In their response, plaintiffs have failed to demonstrate the existence of a genuine dispute as to a material issue of fact. Accordingly, defendant's motion for summary judgment on Count III is granted.

### IV.

Count IV involves the alleged improper payment of funds to a Judd account at the Citizens National Bank, Bowling Green, Kentucky. The pertinent facts, which are not in dispute, are as follows. In June 1985, OSM received a request, signed by Billy H. Judd as "owner" of Judd, directing OSM to pay, through electronic transfers of funds, all progress payments in excess of $25,000 to Judd's account at the Citizens National Bank. Immediately prior to this request, OSM had directed progress payments to Judd's account at a different bank. In accordance with Judd's instruction, on October 21, 1985, OSM sent a progress payment of $49,121.23 to Judd's account at the Citizens National Bank.

Shortly after the deposit, the contracting officer received a letter, dated November 7, 1985, from counsel representing two individuals associated with Judd, Bill G. Valentine and Lawrence E. Hawkins. Counsel objected to OSM having sent the progress payment to the Citizens National Bank and demanded that a substitute payment be sent to the bank account that had been designated to receive the funds prior to the June 1985 request. The contracting officer refused on the ground that the contractor was Judd and not Messrs. Valentine and Hawkins. While the names of Messrs. Valentine and Hawkins appear on the initial bid forms under the heading "FULL NAME OF ALL PARTNERS," neither of them signed the contract or otherwise entered into the agreement and neither was in privity of contract with the government. Since the request had been signed by Billy H. Judd, the sole Judd corporate officer of record, the contracting officer concluded that OSM had properly made the payments according to the contractor's wishes.

In Count IV, plaintiffs challenge OSM's acceptance of the directions contained in the June 1985 electronic funds transfer form and consequent transmittal of the progress payment to the Citizens National Bank. Plaintiffs assert that the transfer was "wrongful[ ] and in violation of the contract documents" and constituted a "negligent transfer."

In its motion for summary judgment, defendant makes two alternative arguments. First, defendant contends that this court lacks jurisdiction over Count IV, and, second, defendant contends that assuming this court did have jurisdiction, defendant is entitled to summary judgment because it properly made the payment to the Citizens National Bank pursuant to the request of Billy H. Judd, the sole corporate officer of the contractor. Defendant is correct on both points.

engineer, is entitled "Designation as Contracting Officer's Representative (COR) Technical Project Officer (TPO)." The memorandum states, in pertinent part:

Your responsibilities will be as follows:
Recommend in writing to the Contracting Officer, desired changes to the scope of work giving a full explanation of the proposed action. *Only the contracting officer is authorized to modify or terminate the contract.*

    \*    \*    \*    \*    \*    \*

As my technical representative you are *not* authorized to: (a) execute or agree to any changes in the specifications, delivery schedule, or other terms and conditions of the contract; [or] (b) order work outside ˙the scope of the contract[.]

(Emphasis in original.) A copy of this memorandum was sent to Billy H. Judd, who, on September 17, 1983, signed and returned it to OSM.

■ Defendant's jurisdictional attack proceeds essentially as follows. Both a written claim by a contractor and a decision by the contracting officer (or a deemed decision pursuant to 41 U.S.C. § 605(c)(5)) are jurisdictional prerequisites for a direct action in this court under 41 U.S.C. § 609. *See, e.g., Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 183–84, 645 F.2d 966, 971 (1981). Here, when the instant action was filed, these jurisdictional prerequisites had not been met. Plaintiffs did not submit to the contracting officer their claim relating to the allegedly improper progress payment until November 27, 1989, more than a year and one half after the instant action was filed. Since "jurisdiction is established, if at all, at the time the suit is filed," *UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1022 (Fed.Cir.1992), defendant contends that this court lacks jurisdiction over Count IV.

■ In response, plaintiffs contend that the jurisdictional prerequisites were met because, in fact, the contracting officer had rejected a claim challenging OSM's handling of the disputed progress payment before the instant suit was filed. Plaintiffs rely on the November 7, 1985, letter to the contracting officer from counsel for Messrs. Valentine and Hawkins seeking a new payment, and the contracting officer's response refusing to make such a payment. But the 1985 letter did not constitute a claim under the Contract Disputes Act (CDA), 41 U.S.C. § 601 *et seq.* The CDA requires that the claim be "by a contractor." 41 U.S.C. § 605 ("All claims *by a contractor* against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision" (emphasis added).) The November 7, 1985, letter was from counsel representing two individuals associated with Judd, and did not purport to constitute a claim from Judd, the contractor. Indeed, rather than suggesting that it was a claim from Judd, the letter complained about a payment that had been made to Judd's account at the Citizens National Bank. Hence, no claim covering the progress payment was made to the contracting officer until after the instant action was filed and

"since jurisdiction is established, if at all, at the time the suit is filed" (*UNR*, at 1022) the claim was filed too late to support this action.

■ Next, even if this court did have jurisdiction over Count IV, defendant would be entitled to summary judgment on this count. To support its summary judgment motion, defendant presents the June 1985 electronic funds transfer form. The form had been signed by Billy H. Judd as "owner" of Judd and directed that future progress payments be made to Judd's account at the Citizens National Bank. Therefore, it appears that in sending the check to Judd's account at the Citizens National Bank, OSM was simply complying with the contractor's request. In their response to defendant's properly supported summary judgment motion, plaintiffs have failed to demonstrate either the existence of a dispute as to a genuine issue of material fact, or that defendant is not entitled to judgment as a matter of law on the undisputed facts. Plaintiffs merely allege that the electronic funds transfer form signed by Billy H. Judd was defective and that OSM's payment to the Citizens National Bank was a violation of the contract. But plaintiffs do not explain in what way Judd's June 1985 electronic funds transfer form was defective and do not identify any contract provision that suggests that the payment should not have been made in accordance with this explicit directive of Billy H. Judd.

At oral argument, plaintiffs explained that Billy H. Judd had absconded with the payment and that Messrs. Valentine and Hawkins had sought a new payment from OSM. But while these allegations suggest that Billy H. Judd may have breached an obligation owed to Messrs. Valentine and Hawkins, the allegations do not suggest any action by defendant inconsistent with its obligations under the instant contract. Therefore, if this court did have jurisdiction over Count IV, summary judgment for defendant on this count would be warranted.

## V.

■ Finally, after the parties fully briefed defendant's motion for partial sum-

mary judgment, plaintiffs, for the first time at oral argument, made a highly unusual request. Plaintiffs asked this court to permit them to conduct further discovery so as to enable them to uncover possible genuine issues of material fact on the counts addressed by defendant's motion. The rationale for this late request was that plaintiffs, in an act of professional courtesy extended to defendant's prior counsel, had failed to complete discovery prior to responding to defendant's summary judgment motion. Plaintiffs allege that subsequent to filing its summary judgment motion, defendant, through its prior counsel, had asked plaintiffs to postpone further discovery because defendant's counsel was changing jobs. Plaintiffs consented and, in return, defendant's prior counsel purportedly promised plaintiffs' counsel additional discovery at some future undefined time.

Defendant denies these allegations. According to defendant, its prior counsel never asked plaintiffs to forego requesting discovery for any reason, much less because defendant's counsel was changing jobs. Moreover, defendant contends that plaintiffs never even advised defendant that plaintiffs required additional discovery to respond to any issue raised in defendant's motion for partial summary judgment. Defendant contends that its prior counsel merely said that she would agree to any discovery request by plaintiffs on any issue that remained for trial after the court ruled on the summary judgment motion.

It is not necessary for this court to resolve the disparities between the recollections of the parties' counsel because, in any event, plaintiffs' request for additional discovery will be denied. First, discovery had closed prior to the alleged conversation between counsel, and the court would not have reopened discovery if plaintiffs had requested additional discovery at that time. Plaintiffs had ample opportunity to conduct

discovery and, pursuant to an order of this court, were obliged to have completed discovery by January 7, 1991, the date on which defendant served a copy of its summary judgment motion. The parties originally asked for three months within which to complete discovery. The court granted numerous extensions and discovery ultimately did not close until approximately 13 months beyond the original deadline.

Moreover, from the earliest days of this litigation, the parties had agreed that dispositive motions would not be filed until after discovery closed. The various pretrial schedules proposed by the parties throughout the discovery proceedings so provided. Consistent with this position, defendant served its summary judgment motion on the date discovery closed. In this setting, since plaintiffs had ample time to complete discovery within the ordered time frame and since the parties had agreed that dispositive motions would be filed *after* the close of discovery, this court would have denied any request for additional discovery made after defendant had filed its summary judgment motion. Therefore, there is no sound reason for the court now to grant such discovery, even if the parties' conversations after the summary judgment motion was filed were as plaintiffs allege.

One other point should be stressed. Litigation in this court must be controlled by this court and its rules and not by side agreements between counsel. The procedures governing summary judgment are set forth in RUSCC 56, which, in effect, obliges the nonmoving party either to respond to the summary judgment motion on its merits or to file an affidavit under RUSCC 56(g) indicating why a continuance is necessary to permit additional time either to secure an appropriate factual affidavit or to take needed discovery.[6] Plaintiffs, in essence, argue that, without informing the court, the parties agreed to a different procedure pursuant to which

---

6.  RUSCC 56(g) provides:

    Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify such party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

plaintiffs would respond on its merits to the summary judgment motion, but could later take additional discovery if summary judgment would be granted. While the court cannot imagine why defendant would have agreed to such a procedure (defendant denies it did), in any event, this court would not have sanctioned such an approach, even had it been brought to the court's attention in a timely fashion. On the facts of this case, such a procedure was sure to waste the resources of both the parties and the court. Plaintiffs were obliged to inform the court earlier than they did to the extent that they sought to proceed under procedures different than those established by the orders and rules of this court. In the absence of such timely notice, the court will not now permit plaintiffs to take the discovery they seek.

### Conclusion

For the reasons set forth above, defendant's motion for partial summary judgment is granted as it relates to Count III of the second amended complaint, and Count IV is dismissed for lack of jurisdiction.

IT IS SO ORDERED.