**Hipolito CRUZ–PAGAN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 91–1103C.

United States Court of Federal Claims.

March 1, 1996.

Richard L. Caplan, Paoli, Pennsylvania, for plaintiff. Steven N. Yermish, of counsel.

John C. Erickson, III, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Assistant Director, Washington, D.C., for defendant. Vicki Curcio, Drug Enforcement Administration, of counsel.

*OPINION*

ANDEWELT, Judge.

I.

In this action, plaintiff, Hipolito Cruz–Pagan, seeks to recover $225,250 from the United States Department of Justice Drug Enforcement Administration (DEA) for assistance and information plaintiff provided DEA field agents in a drug investigation that resulted in a forfeiture to the United States of $901,000 in cashier's checks. In his com-

plaint, plaintiff asserts different theories of recovery, including breach of contract, unjust enrichment, misrepresentation, and estoppel. During oral argument, however, plaintiff conceded that this court lacks jurisdiction over plaintiff's unjust enrichment claim and that plaintiff cannot recover under any of his other theories of liability unless plaintiff first can establish that a contract existed between DEA and plaintiff. In an April 10, 1995, order, this court denied defendant's motion for summary judgment and prompted discovery on the issue of whether the DEA agents with whom plaintiff allegedly entered an agreement had implied actual authority to bind the government in contract. Upon completion of discovery, defendant filed a new motion for summary judgment. For the reasons set forth below, defendant's motion is granted.

## II.

Plaintiff alleges that he entered an enforceable contract with DEA through an agreement he reached with certain DEA field agents to the effect that plaintiff would receive 25 percent of the value of any property seized and forfeited as a result of plaintiff's assistance in a drug investigation. Plaintiff provided information and assistance that led to the forfeiture of $901,000 in cashier's checks. DEA agents recommended that plaintiff receive a $100,000 award for his assistance but later withdrew that recommendation when plaintiff was indicted for conspiracy to possess cocaine with the intent to distribute.

To establish an enforceable contract with the United States, a party must show a mutual intent to contract, including an offer, an acceptance, and consideration passing between the parties. *Fincke v. United States,*

230 Ct.Cl. 233, 244, 675 F.2d 289, 295 (1982). In addition, the party must demonstrate that the government representative who entered the agreement had actual authority to bind the government in contract. *City of El Centro v. United States,* 922 F.2d 816, 826 (Fed. Cir.1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). For contracts among private parties, it is sufficient that an agent have "apparent authority" to bind the principal in contract.[1] The additional requirement of actual authority for government contracts places a significant burden on the party negotiating an agreement with a government representative. As explained in *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947): "[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."[2]

In support of its original motion for summary judgment, defendant presented an affidavit in which a DEA official stated that DEA had not granted contracting authority to the agents with whom plaintiff allegedly entered an agreement. In denying defendant's motion, this court concluded that the affidavit was insufficient to support summary judgment because in appropriate factual settings actual authority can be implied and an express grant of authority is not necessary. *H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir.1989) ("Although apparent authority will not suffice to hold the government bound by the acts of its agents, implied actual authority, like expressed actual authority, will suffice." (citation omitted)); *see*

1. The Restatement (Second) of Agency § 8 defines apparent authority as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Such authority "is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf

by the person purporting to act for him." *Id.* § 27.

2. With respect to this distinction between government contracts and private contracts, the Supreme Court in *Merrill* explained: "[T]he rules of law whereby private ... companies are rendered liable for the acts of their agents are not bodily applicable to a Government agency ... unless Congress has so provided." 332 U.S. at 383 n. 1, 68 S.Ct. at 3 n. 1.

also *Miller Elevator Co. v. United States,* 30 Fed.Cl. 662, *appeal dismissed,* 36 F.3d 1111 (Fed.Cir.1994); *Zoubi v. United States,* 25 Cl.Ct. 581 (1992). After completion of discovery on the issue of implied actual authority, defendant filed the instant summary judgment motion.

### III.

■ In *Landau,* the Court of Appeals for the Federal Circuit articulated the following standard for determining the existence of implied actual authority: " 'Authority to bind the [g]overnment is generally implied when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee.' " 886 F.2d at 324 (quoting John Cibinic, Jr., and Ralph C. Nash, Jr., *Formation of Government Contracts* 43 (1982)). Herein, both parties agree that the applicable definition of "integral" is "necessary to form a whole" or "essential to completeness," as set forth in *Webster's Third International Dictionary* 1173 (1981). To support his argument that contracting authority is necessary or essential to DEA agents' carrying out their assigned duties, plaintiff relies upon deposition testimony from both a DEA official and an agent. The essence of this testimony is that DEA agents routinely use informants, also known as "co-operating individuals," in their investigations and these informants expect, and virtually always receive, some form of compensation for their assistance. Such compensation typically is either in the form of a monetary award or a recommendation that the informant receive a reduced sentence for a crime the informant previously committed. Plaintiff argues that because DEA agents need informants and informants expect compensation, DEA necessarily expects its field agents, who are responsible for interaction with informants, to enter compensation agreements with these informants so as to induce cooperation. In other words, plaintiff argues that contracting authority is an "integral part of the duties assigned" to DEA agents because contracting authority is necessary and essential to the performance of their assigned duties of maintaining contact and exercising control over informants.

Plaintiff's proposed conclusion, however, does not follow inexorably from the evidence upon which plaintiff relies. Assuming that plaintiff is correct that DEA field agents need the assistance of informants and that these informants expect compensation, it would not follow that the only reasonably efficient way to secure this required assistance is to grant DEA field agents contracting authority. DEA can expect potential informants to assist DEA field agents so long as the informants expect, based on the totality of the circumstances, that DEA will compensate them fairly for any assistance rendered. It would appear that DEA could efficiently create such an expectation of compensation without granting contracting authority to its field agents. For example, DEA could adopt internal procedures that grant contracting authority to supervisors of the field agents and oblige the field agents to secure approval from their supervisors before agreeing to provide compensation for assistance. Alternatively, DEA could establish procedures by which DEA would evaluate the value of the information or service provided, and based on that evaluation grant compensation to informants on a fair and reasonable basis. DEA apparently has followed the latter approach. DEA has the authority under 28 U.S.C. § 524 to compensate informants assisting in drug investigations and has established internal procedures pursuant to which DEA officials grant such compensation based on recommendations from DEA field agents. *See* DEA Agent's Manual § 6612.44.B.2 (requiring that award recommendations include a description of the "extent and significance of the individual's information or assistance in the development of the investigation and the value and impact of the investigation's results"). In this setting, because reasonably efficient alternatives appear to exist to create the desired expectation of compensation, it would not be necessary or essential for DEA to grant contracting authority to its field agents in order to enable the agents to carry out their assigned duties of maintaining contact and exercising control over informants.[3] Hence, the prereq-

---

3. There seems to be one additional analytical flaw in plaintiff's argument that warrants note.

uisites set forth in *Landau* for implied actual authority do not exist.

## IV.

█ An alternative ground exists for denying implied actual authority that does not rest on the perceived viability of the apparent alternatives to granting contracting authority to the field agents. This court cannot imply that field agents possess actual contracting authority because DEA's internal regulations expressly preclude DEA field agents from exercising such authority.

Section 6612.45 of the DEA Agent's Manual describes the responsibility within DEA for approving payments to informants as follows:

C. *Award Payments*

1. [T]he [Special Agent in Charge] or Country Attache may approve payments up to $25,000 per quarter; the Deputy Assistant Administrator for Operations ... may approve amounts beyond $25,000. . . . The Attorney General may delegate authority to the Administrator to approve an award in excess of $250,000. This authority may not be redelegated.

2. Offices must not promise any award in any amount to an individual. The statutory authority provides that the payment of such awards is purely discretionary.

Because the field agents with whom plaintiff allegedly reached an agreement were neither Special Agents in Charge nor Country Attaches, the agents lacked authority under Section 6612.45.C.1 to approve payments to informants and therefore are subject to the prohibition in Section 6612.45.C.2 and "must

not promise any award in any amount to an individual." [4]

This prohibition on field agents promising any award is necessarily fatal to plaintiff's claim of implied actual authority. An analysis of whether a government employee has actual authority to bind an agency in contract must start with a focus on the source of the purported authority—the agency itself. DEA possesses the statutory authority to enter contracts that legally oblige DEA to perform certain actions. DEA also has the authority, consistent with any legal limitations, to select its own agents or representatives. Because the underlying authority to bind DEA in contract rests with DEA itself, if a DEA employee is to possess actual authority, then the employee must derive that authority from DEA, *i.e.*, DEA must delegate or grant the employee the authority to bind the agency in contract. Under *Landau*, such a delegation of actual authority can be either express or implied. Any implication of actual authority, however, must be reasonable and based on the particular facts of the case. Because DEA adopted procedures that specifically preclude field agents from exercising contracting authority, it simply is not reasonable to imply that DEA granted or delegated such authority to its agents.

█ In other words, the doctrine of implied actual authority cannot be used to create an agent's actual authority to bind the government in contract when the agency's internal procedures specifically preclude that agent from exercising such authority. Instead, the doctrine serves to fill in the

---

Plaintiff's premise is that contracting authority is essential to DEA field agents encouraging cooperation from informants and therefore is essential to the agents performing their designated duties. DEA, however, in this and similar litigation, has repeatedly taken the position that field agents lack such authority to bind the government in contract. *See, e.g., Henke v. United States,* 60 F.3d 795 (Fed.Cir.1995); *Hoch v. United States,* 31 Fed.Cl. 111 (1994). DEA must expect that over time its public statements with respect to compensation will become known to potential informants. Hence, if the court were to conclude that contracting authority is necessary or essential to field agents securing the assistance of informants, then a necessary corollary to that conclusion would be that DEA has been

intentionally making public statements that undermine DEA's ability to obtain the assistance of informants and thereby to carry out its central mission of enforcing the drug prohibition laws. DEA is in the optimal position to determine whether contracting authority is integral to the job performance of its agents, and DEA's actions support the conclusion that DEA does not view contracting authority as integral.

4. Because the field agents with whom plaintiff interacted are not covered in Section 6612.45.-C.1, this court need not address the issue of whether the approval authority granted therein encompasses the authority to enter contracts that promise subsequent payment.

gap when an agency reasonably must have intended certain representatives to possess contracting authority but failed expressly to grant that authority. If an agency, without mentioning contracting authority, delegates specific duties to an employee and the employee's ability to enter contracts is integral, *i.e.*, necessary or essential, to the employee's efficient performance of those duties, then it is appropriate to imply that the agency intended to delegate or grant actual contracting authority to the employee.[5] But in situations where, as here, an agency adopts internal procedures that preclude the employee from exercising such authority, it is totally inconsistent with the agency's actions to imply that the agency delegated or granted actual contracting authority. Hence, in such cases, the doctrine of implied actual authority should not apply.

### V.

Summary judgment is appropriate where there is no genuine issue of material fact (*i.e.*, a fact that might affect the outcome of the suit) and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *see Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). Herein, defendant has satisfied its burden to demonstrate the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Because the grant of contracting authority is not integral to field agents performing their designated duties and because DEA internal procedures forbid field agents from promis-

ing compensation for assistance, it simply is not possible to imply that DEA granted these agents contracting authority. Thus, even if, as plaintiff alleges, the interaction between plaintiff and certain DEA field agents satisfied all of the other requirements for a binding contract, there is no enforceable contract because those agents lacked actual authority to bind the government in contract. "Where an approving official exceeds his authority, the government can disavow the official's words and is not bound by [the] contract." *New America Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1080 (Fed.Cir.1989).

### *Conclusion*

For the reasons set forth above, defendant's motion for summary judgment is granted and the Clerk of the Court shall enter judgment dismissing plaintiff's complaint. No costs.

IT IS SO ORDERED.

---

**5.** Defendant cites *California Sand & Gravel, Inc. v. United States*, 22 Cl.Ct. 19, 27 (1990), *aff'd mem.*, 937 F.2d 624 (Fed.Cir.1991), *cert. denied*, 502 U.S. 1057, 112 S.Ct. 934, 117 L.Ed.2d 105 (1992), for the proposition that the doctrine of implied actual authority can be invoked only to broaden existing contracting authority and not to create contracting authority when none exists. *See also Zacharin v. United States*, 34 Fed.Cl. 609, 615 (1996); *Howard v. United States*, 31 Fed.Cl. 297, 314 (1994); *Essen Mall Properties v. United States*, 21 Cl.Ct. 430, 444–46 (1990). But in remanding *Landau* for application of the doctrine of implied actual authority, the Court of

Appeals for the Federal Circuit neither suggested that the government representatives therein had any such contracting authority or purported to create such a requirement for the lower court to consider. Rather, the *Landau* court focused on whether the contracting authority in issue was integral to the government representatives carrying out their duties. If such authority were integral, then, as described above, the court could presume that the agency intended to delegate contracting authority. Such a presumption would seem equally applicable whether or not the representatives had been granted contracting authority.