**CONTEL OF CALIFORNIA, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–594C.**

United States Court of Federal Claims.

Dec. 4, 1996.*

ance of a RCFC 52.1(b) motion.

Thomas F. Williamson, Washington, D.C., for Plaintiff.

Alfred S. Irving, Jr., Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for Defendant. Paul R. Schwedler, Defense Information Systems Agency, and Jared Silberman, Department of the Navy, of counsel.

## OPINION

MEROW, Judge.

This suit involves a contract dispute between plaintiff Contel of California, Inc., and the Department of the Navy over communications equipment at the China Lake Naval Weapons Center. In an August 18, 1995, order the parties' respective motions for summary judgment were denied without prejudice to their renewal after certain information was submitted to the Court. For the reasons discussed below, defendant's renewed motion for summary judgment is granted and plaintiff's is denied.

## FACTS

Certain facts recited in the August 18 order merit repetition. In May 1992, the Navy terminated its use of plaintiff's telecommunication services and switched to a government-owned network. This action has allegedly precluded Contel from recovering its investment in outside cable plant that it had installed between 1975 and 1992. Plaintiff subsequently brought suit to recoup its unrecovered investment ($778,506.00) and termination for convenience costs (shutdown costs ($240,402.84), profit on shutdown ($26,-444.00), and claim preparation costs ($59,-201.90)).

The August 18 order noted that the governing agreement, its predecessor agreements, the 1975 communication service authorization (CSA), and master CSA's mandated that the parties execute supplemental CSA's before particular equipment (including outside cable plant) could be installed at the Weapons Center. The governing agreement and each supplemental CSA were to comprise a separate contract governing the ordered equipment. The August 18 order directed the parties to identify the CSA's that had authorized the installation of the outside cable plant. Those CSA's were to be used to determine whether defendant is liable for Contel's unrecovered investment and termination costs and, if so, the amount of that liability.

The parties have ascertained that CSA's were not used to procure the equipment at issue, but acknowledge that they were required.

## DISCUSSION

In its initial motion plaintiff argued that the governing agreement mandated the relief it seeks: Articles B5(a) and B5(d) obligated reimbursement for Contel's "nonrecoverable costs;" Article B5(d)(4) compelled reimbursement for its shutdown costs; 48 C.F.R. § 49.202 (FAR) allowed profits on shutdown; and 48 C.F.R. § 31.205–42 (FAR) authorized claim preparation costs. Plaintiff has recanted this position and now argues that the outside cable plant was not installed pursuant to the governing agreement, but rather to an implied-in-fact contract. The defendant challenges this revised position.

█ It is concluded that the plaintiff is not entitled to the relief it seeks for three reasons. First, as discussed in the August 18 order, the government incurs no liability under the governing agreement alone. *See* Article A68 (governing agreement); Article 18 (1972 basic agreement). The government's liability "shall arise, if appropriate, upon the issuance of a CSA pursuant to the terms" of a governing agreement. *Id.* Again, CSA's were not used to authorize the placement of the outside cable plant at the Weapons Center. Accordingly, the defendant is relieved of liability arising from the Navy's decision to terminate its use of Contel's telecommunications network in 1992.

█ Second, "where a suit is filed on an express contract, recovery cannot be had on another ground, such as on an implied contract unless the implied contract is pleaded in the alternative." *Algonac Mfg. Co. v. United States,* 192 Ct.Cl. 649, 673, 428 F.2d 1241, 1255 (1970). Plaintiff has made no effort to amend its complaint and allege an implied-in-fact contract. Plaintiff still alleges that the "Navy's actions in terminating service ... give rise to Defendant's liability under Article B5(d) of the 1991 Basic Agreement for Contel's stranded Outside Cable Plant investment." [1] Compl. at ¶ 33.

---

1. In *Algonac Mfg. Co.,* even though plaintiff did not plead an implied contract, the court went on

■ Third, Contel's revised argument for recovery is without merit. Specifically, Contel maintains that, because it installed the cable plant at the Navy's "request and for the [Navy's] benefit," it is "entitled to the reasonable value of the benefits provided [unrecovered investment in cable plant] under a theory of *quantum meruit* based on a contract implied-in-fact." Pl.'s Mot. (Dec. 14, 1995) at 6, 15. Contel also maintains that its termination costs were either incurred pursuant to an implied-in-fact contract and "thus are part and parcel of Contel's investment in outside cable plant which the government ordered and enjoyed," or were incurred "to preserve the outside cable plant on the government's behalf." *Id.* at 16–17. In either case, Contel argues, "defendant is liable for the value to the government of Contel's expenditures under a theory of *quantum meruit.*" *Id.* at 17.

The defendant responds that the former claim is essentially one that is implied-in-law and thus beyond the court's jurisdiction. The latter claim is also unwarranted, defendant asserts, because Contel has not "identified anyone who possessed the requisite authority to obligate the government to termination liability." Def.'s Resp. (Mar. 14, 1996) at 8.

■ It is concluded that any contractual relationship for the telecommunication services and equipment at issue would be one implied-in-law: the parties neglected to execute the CSA's that would have formed express contracts; and Contel has not established the authorization element of contracts that are implied-in-fact. The court's Tucker Act jurisdiction extends to contracts either express or implied-in-fact, but not to claims on contracts implied-in-law. *Hercules, Inc. v. United States,* —— U.S. ——, ——, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996) (citations omitted); 28 U.S.C. § 1491(a)(1). Accordingly, the court may not entertain plaintiff's claims.

■ An implied-in-fact contract is one "founded upon a meeting of minds, which,

to consider the claim "in order to dispose of the case." 192 Ct.Cl. at 673, 428 F.2d at 1255. This

although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Id.* (citing *Baltimore & Ohio R. Co. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 426–27, 67 L.Ed. 816 (1923)). An implied-in-fact contract requires proof of the same elements necessary to evidence an express contract: mutuality of intent, consideration, and lack of ambiguity in offer and acceptance. *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990) (citations omitted), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991). When the United States is a party to such an agreement, the contractor must also show that the official(s) whose conduct it relied upon had the authority to bind the government in contract. *Id.; see also Kania v. United States,* 227 Ct.Cl. 458, 465, 650 F.2d 264, 268, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981) (contractor has burden of proof). By contrast, a contract implied-in-law is one in which no actual agreement between the parties occurred but where a duty is imposed by equity to prevent injustice. *Algonac Mfg. Co.,* 192 Ct.Cl. at 673–74, 428 F.2d at 1255–56 (citations omitted); *see also Hercules,* —— U.S. at ——, 116 S.Ct. at 985.

Plaintiff insists that it had the necessary authorizations. Plaintiff contends that "the Contracting Officer was aware of [its] activities in installing the Outside Cable Plant and *effectively* directed Contel to install Outside Cable Plant at the request of Government representatives." Pl.'s Proposed Findings (Dec. 14, 1995) at ¶ 8 (emphasis added). Plaintiff also contends that the commanding officer of the Naval Facilities Engineering Command, Western Division, "knew of and ratified the ordering of the cable." Pl.'s Reply (Mar. 29, 1996) at 4. These statements, however, tacitly acknowledge that neither officer indeed ordered the services and equipment, nor pledged to compensate Contel for its unrecovered investment and termination costs should the Navy terminate its use of the telecommunications system.

matter has been similarly resolved.

 Plaintiff also seems to suggest that personnel at the Weapons Center had implied actual authority to bind the government:

> [The contracting officer] permitted senior representatives from the Government Telecommunications Office to direct installation of Outside Cable Plant without use of required CSAs.... In short, the Government personnel involved had authority to contract even if they did not follow the procedure agreed upon by the parties—use of CSAs. Thus, this is not a case where the Court lacks jurisdiction because Government personnel who lacked authority to contract attempted to obligate the Government [citations omitted]. The Government personnel who ordered the Outside Cable Plant at issue had authority to bind the Government. Pl.'s Mot. (Dec. 14, 1995) at 8–9.

Authority to bind the government may be implied when such authority is considered to be an integral part of the duties assigned to a government employee. *H. Landau & Co. v. United States*, 886 F.2d 322 (Fed.Cir.1989). However, the doctrine may not be employed to bind the government in contract when an agency's internal procedures specifically preclude its agent from exercising such authority. *Cruz–Pagan v. United States*, 35 Fed.Cl. 59, 62–63 (1996). Instead, the doctrine serves to fill in the gap when an agency reasonably must have intended certain representatives to possess contracting authority but failed expressly to grant that authority. *Id.*

The doctrine is inapplicable to the instant suit. The master CSA's identified which Navy personnel had the authority to order delineated categories of telecommunication services and equipment from Contel during a particular fiscal year. *See, e.g.,* JR–75–1925 (Def.'s Mot. (Jun. 30, 1994) at App. 78–79). In some instances, the master CSA's even prohibited orders for "cable facilities" and agreements to termination liability. *See, e.g.,* JR–83–1010 (*Id.* at App. 83–84). The master CSA's did not delegate this authority to members of the telecommunications office. Therefore, it would be inconsistent to imply that the Navy delegated or granted actual contracting authority to these individuals. *Cruz–Pagan,* 35 Fed.Cl. at 63.

 In sum, Contel's arguments that the orders for telecommunication services and the concomitant equipment had the necessary authorizations are deficient. It is evident that between 1975 and 1992 there were hundreds of orders. Contel, however, cannot identify which Navy official empowered with contracting authority made any single order. Anyone who contracts with the government "takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority." *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

Alternatively, even if Contel could establish the authorization element of an implied-in-fact contract, it seemingly concedes to the absence of mutuality of intent. Contel admits that the Navy did not agree to termination liability. Pl.'s Reply (Mar. 29, 1996) at 2. Contel explains that the "termination liability provisions are in the basic agreements, which are not applicable to an implied-in-fact contract." *Id.* Moreover, Contel does not contend that, in the course of ordering the services and equipment, the Navy ever agreed to pay for any unrecovered investment.

The essence of plaintiff's *quantum meruit* argument for relief is its misplaced reliance on *United States v. Amdahl Corp.,* 786 F.2d 387 (Fed.Cir.1986). While there is considerable discussion in *Amdahl* about the prior case law concerning relief available under implied contracts with the government, the decision is expressly premised upon the then applicable section of the Brooks Act (40 U.S.C. § 759(h)(6)(B)) which provided that, in the circumstances involved, "... the affected contract shall be presumed valid as to all goods or services delivered and accepted under the contract before the suspension, revocation, or revision of such procurement authority or delegation." *Amdahl,* 786 F.2d at 390, 398. The Brooks Act is not involved in the present case.

 The *Amdahl* decision has been explained as based upon the equitable pow-

ers of the United States Court of Appeals for the Federal Circuit derived from its status as an Article III court. *See, e.g., Mega Const. Co. v. United States,* 29 Fed.Cl. 396, 470–72 (1993). However, "... [a]ll federal courts, except the Supreme Court, are established by Congress and possess only the jurisdiction granted to them by the Congress." *In re United States,* 877 F.2d 1568, 1571 (Fed.Cir. 1989). The Tucker Act does not confer jurisdiction over implied-in-law contracts to either the Court of Federal Claims or the Federal Circuit. *Hercules, Inc.,* —— U.S. at ——, 116 S.Ct. at 985.

 Accordingly, recovery against the United States, premised upon an implied contract is confined to those situations where the existence of an implied-in-fact contract can be established. This can occur in circumstances where, under a purported express contract, goods or services are provided to the United States, but the purported contract lacks validity. Absent a valid express contract, circumstances can support the existence of an implied-in-fact contract covering provided goods or services. This is the case precedent discussed by the Federal Circuit in *Amdahl.* In the instant case, however, no purported express contract under which any goods or services were delivered has been identified. As discussed earlier, the requirements for a valid implied-in-fact contract have not been established. Those persons charged to bind the government in contract never acted. Any recovery for plaintiff would have to be premised upon an implied-in-law contract, which would not be within the jurisdiction granted by Congress to this court.

### CONCLUSION

Accordingly, it is **ORDERED** that defendant's motion for summary judgment is **GRANTED**, and final judgment shall be entered dismissing the complaint. No costs to be assessed.