**AERO-ABRE, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 95–320 C.**

United States Court of Federal Claims.

Dec. 11, 1997.

Robert L. Kenny, San Diego, CA, for plaintiff.

Randi-Sue Rimerman, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen and Richard E. Rice, Washington, DC, for defendant.

**OPINION and ORDER**

TURNER, Judge.

In this government contract case, plaintiff seeks enforcement of an alleged pricing amendment made with a representative of the contracting officer. The case stands on defendant's motion filed October 3, 1995 to dismiss the action for failure to state a claim on which relief can be granted or, alternatively, for summary judgment. For reasons stated below, we conclude that defendant's motion should be denied.

I

Plaintiff is a corporation in the business of towing and storing vehicles. On November 2, 1987, plaintiff contracted with the United States Marshals Service (USMS) to tow, store and prepare for sale vehicles seized by the Department of Justice in the San Diego Border Patrol area.

Under the original contract, plaintiff was required to store 1500 vehicles and prepare approximately 170 vehicles for sale each month. Plaintiff was paid $36,000 per month for these services. Plaintiff was also paid a $.50 per day fee for each vehicle stored above 1500. The contract period was one year with four one-year options, all of which were exercised by the USMS.

The contract required plaintiff to submit invoices to the USMS office in San Diego for approval and certification. Def. Mot. (10/3/95), App. at 18, 45. Plaintiff was also required to submit duplicate invoices to the National Asset Seizure and Forfeiture Office (NASAF) in San Diego. *Id.* A Contracting Officer's Technical Representatives (COTR) had to certify each invoice as correct before forwarding the invoice to the USMS Payment Office. *Id.* at 43–44. The contract also required a COTR to submit a copy of the certified invoice to the Contracting Officer (CO). *Id.*

In December 1987, contract modification 001 designated the COTRs: Robert E. Dighera, Chief Deputy United States Marshal, and Gerald C. Smith, Criminal Asset Investigator with NASAF. *Id.* at 70–71. Plaintiff worked very closely with COTR Dighera who allegedly informed plaintiff he was in charge of the contract. Dighera monitored the vehicle inventory, determined whether plaintiff was meeting the contract requirements, and supervised the preparation of vehicles for sale.

During the first year of contract performance, plaintiff's storage inventory never exceeded 1500 vehicles. However, in 1989, all

DOJ agencies in the Southern District of California began to use plaintiff's services, resulting in a dramatic increase in the number of vehicles towed and stored by plaintiff. In April 1989, plaintiff had more than 1500 vehicles in storage. At this time, plaintiff was directed by a CO, Kim Butler, not to accept any more vehicles. The government then entered into a contract with a different company to tow and store the excess vehicles.

Later that year, plaintiff was informed by another CO (Kathy Coghill) that CO Butler had incorrectly interpreted the contract and that plaintiff was required to meet all of the USMS's vehicle storage requirements for the area. In August 1989, the parties modified the contract. Plaintiff agreed to meet all the storage requirements of the government and the government promised to store the excess vehicles with plaintiff. Following this modification, plaintiff leased additional space, made physical improvements and hired additional staff in order to meet the contract requirements.

Shortly after that contract modification, COTR Dighera informed plaintiff that the government wanted to increase sales of seized vehicles in order to reduce storage fees. Plaintiff objected because the contract required plaintiff to prepare for sale only approximately 170 vehicles per month and increased sales would increase plaintiff's costs and reduce income from storing the extra vehicles. Plaintiff was depending on the excess storage charges to cover the cost of expanding its storage facilities and believed that increased sales would reduce if not eliminate the need to store excess vehicles.

COTR Dighera and his assistant Kathleen Carson (Supervisory Deputy U.S. Marshal) agreed that plaintiff's costs would increase and that his storage income would decrease. Dighera and Carson asked plaintiff to propose a solution. Plaintiff's president, Larry Lemler, suggested that the extra costs could be recouped if the excess vehicle charge was raised from $.50 per vehicle per day to $.55. Dighera and Lemler eventually agreed that in exchange for plaintiff's installing a computer system and preparing more than twice the contract's amount of vehicles for sale, the government would increase the excess vehicle storage fee from $.50 per day to $.55 per day. Dighera said that he would take care of the required paperwork.

Thereafter, plaintiff prepared the additional vehicles for sale and installed an $8,000 computer system. Lemler received several contract modification letters after his conversation with Dighera and thus assumed that the contract had been modified to reflect their agreement.

For twenty-two months, plaintiff prepared the increased amount of vehicles for sale and in doing so tripled its work force. Each month, plaintiff submitted invoices to Dighera and NASAF in San Diego. Plaintiff itemized its storage fees, charging $.55 per day for each vehicle in excess of 1500. Each month the invoices were approved and plaintiff was paid.

In August 1991, the contract was audited in a contract compliance review by the Seized Assets Division of the San Diego Region. The auditor questioned the $.55 excess vehicle storage charge. Plaintiff informed the auditor of the 1989 agreement and was, in turn, informed that because the agreement had not been formalized in a written change order signed by the CO, plaintiff must discontinue charging $.55 per vehicle. On May 7, 1993, the government informed plaintiff that under the contract it had overpaid the plaintiff by $94,930. Def. Mot. (10/3/95), App. at 144–45. The government refused to pay plaintiff for work until it had recouped the alleged overpayment. *Id.* at 160. The government did recoup the overpayment by withholding payments for plaintiff's subsequent towing and storage services. On April 29, 1994, the CO issued a final decision advising plaintiff that it owed the government $94,930. *Id.* at 162–64.

On May 1, 1995, plaintiff filed the complaint initiating this civil action for payment for the work completed in accordance with the agreement made with the COTR. On October 3, 1995, defendant filed the dispositive motion under discussion.

## II

Defendant seeks dismissal of the complaint under RCFC 12(b)(4) for plaintiff's failure to state a claim upon which relief can be granted. Def. Mot. (10/3/95) at 1. In the alternative, defendant moves for summary judgment under RCFC 56. *Id.* Pursuant to RCFC 12(b), the court will treat the motion as one for summary judgment.[1]

When a party moves for summary judgment, a court may grant the motion if the movant demonstrates that the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

 In the instant case, plaintiff must prove either (1) that Chief Deputy U.S. Marshal Dighera, the COTR with whom the agreement was allegedly made, had actual authority to modify or change the contract, or to enter into a new contract, *see Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947), or, (2) if Dighera did not have such authority, that the unauthorized agreement was ratified by an official with authority to modify or change the contract, or to enter into a new contract.[2] Ratification occurs when a ratifying official has actual or constructive knowledge of an unauthorized agreement and expressly or impliedly adopts the agreement. *Williams v. United States,* 130 Ct.Cl. 435, 127 F.Supp. 617, 623 (1955). In its motion for summary judgment, defendant asserts that plaintiff can prove neither Dighera's express or implied actual authority nor ratification of the agreement.

### A. Authority

The contract-in-suit plainly precludes a finding of express actual authority in Dighera to modify payment terms. Def. Mot. (10/3/95), App. at 41–42, 71. In order to find implied actual authority, a court must conclude that the government intended to grant such authority but failed to do so explicitly due to some oversight or that such authority inheres in a particular position. *See, e.g., Cruz–Pagan v. United States,* 35 Fed.Cl. 59, 62–63 (1996) ("the doctrine of implied actual authority ... serves to fill in the gap when an agency reasonably must have intended certain representatives to possess contracting authority but failed expressly to grant that authority"). Actual authority to bind the government has not been implied when a regulation, a contract, or a letter to the contractor expressly states that the employee does not have actual authority. *See Cruz–Pagan,* 35 Fed.Cl. at 62–63; *Construction Equip. Lease Co. v. United States,* 26 Cl.Ct. 341, 346–47 (1992); *Essen Mall Properties v. United States,* 21 Cl.Ct. 430, 444–45 (1990). Although these cases are not binding on this court, we find them persuasive.

 It is undisputed that the contract-in-suit specifies that Dighera did not have authority to modify the contract or to enter into a new contract. *See* Def. Mot. (10/3/95), App. at 41–42, 71. For this reason, plaintiff may not proceed on the theory that Dighera had implied actual authority to bind the government.

### B. Ratification

Even if Dighera did not have express or implied actual authority, the contract could be properly modified, or a new contract could be formed, if the unauthorized agreement was ratified by one with authority to make the agreement. *Williams,* 127 F.Supp. at 623. In support of its motion for summary judgment, defendant argues that plaintiff cannot prove the agreement was ratified. Def. Reply (9/9/96) at 10–16.

 Plaintiff asserts that it can prove the agreement was ratified by the USMS. Pl.

---

1. According to RCFC 12(b), if a party moves "to dismiss for failure of the pleading to state a claim upon which relief can be granted," and submits with the motion "matters outside the pleading [which] are ... not excluded by the court, the motion shall be treated as one for summary judgment ... as provided in Rule 56."

2. For an informative discussion of ratification, *see* John Cibinic, Jr. and Ralph C. Nash, Jr., *Administration of Government Contracts* 47–55 (1994).

Brief (11/27/95) at 25–26; Pl. Supp. Brief (8/21/96) at 8–10. In doing so, plaintiff relies on the so-called theory of "institutional ratification." *See Silverman v. United States*, 230 Ct.Cl. 701, 679 F.2d 865 (1982). In *Silverman*, the Court of Claims suggested that an implied-in-fact contract can be created from an otherwise unauthorized agreement made by a government employee without authority to contract when the government agency retains the benefits of the agreement. *Id.*, 679 F.2d at 870. However, the Federal Circuit, in *City of El Centro v. United States*, 922 F.2d 816, 821 (Fed.Cir.1990), construed *Silverman* not as a case in which a government agency ratified an unauthorized agreement, but as one in which the contracting employee had implied actual authority to bind the government. Thus, defendant, citing *El Centro*, asserts that the theory of institutional ratification is no longer viable. Def. Reply at 14–15. We agree. Therefore, in light of the Federal Circuit's holding in *El Centro*, plaintiff may not proceed on the theory that the USMS institutionally ratified the agreement between Dighera and plaintiff.

■ Plaintiff has also alleged that certain authorized government officials ratified its agreement with Dighera. For a valid ratification, the ratifying official must have actual authority to bind the government, actual or constructive knowledge of an unauthorized agreement, and must expressly or impliedly adopt the agreement. *Williams*, 127 F.Supp. at 623. Defendant argues that plaintiff cannot prove that the agreement was ratified because plaintiff cannot prove that the agreement was ratified by an official with actual authority to bind the government. Def. Reply (9/9/96) at 10.

Plaintiff asserts that the unauthorized agreement was ratified by the CO or by some other USMS official. Pl. Brief (11/27/95) at 19, 24–26. Defendant asserts

that the contracting officer did not possess authority to ratify the alleged agreement between Abre and Dighera.[3] Def. Reply (9/9/96) at 10. Defendant further asserts that "only the Director and Deputy Director of the United States Marshals Service ha[d] the authority to ratify unauthorized commitments." *Id.* at 10–11. However, these assertions are supported only by the opinion of the contracting officer, Cathy Coghill. Def. Mot. (10/3/95), App. at 172. There is no other evidence that "only the Director and Deputy Director of the United States Marshals Service have the authority to ratify unauthorized commitments." To the contrary, DOJ regulations provide that the USMS Director "may delegate the authority to ratify unauthorized commitments to the chief of the contracting office."[4] 48 C.F.R. 2802.102, 2801.601, 2801.602–3. Neither party has revealed the identity of the "chief of the contracting office" or what division of the USMS constitutes the "contracting office."

■ Without further explication of USMS policy and the ratifying authority of government officials in the USMS, we cannot determine who did and did not have ratifying authority. Therefore, we will not now address whether a particular official had the requisite combination of authority to ratify, knowledge of the unauthorized agreement and intent to ratify the agreement. Further, we have the view, based on the existing record, that testimony from the individuals who agreed to the modification of payment terms and from the contracting officer(s) serving at the time of the agreement and during the time the higher rate was routinely paid to plaintiff will be necessary for a fair resolution of the merits issues. Because of these unresolved issues and the desirability of such testimony, summary judgment is inappropriate at this juncture.

---

**3.** Ordinarily, a contracting officer authorized to agree to change the fee for vehicle storage and to modify other terms in the contract is authorized to ratify these same actions if taken by a representative lacking actual authority to amend the contract.

**4.** Federal Acquisition Regulations also provide that "the head of contracting activity, unless a

higher official is designated by the agency, may ratify an unauthorized commitment.... The ratification authority ... may be delegated in accordance with agency procedures, but in no case shall the authority be delegated below the level of chief of the contracting office." 48 C.F.R. 1.602–3.

### III

Based on the foregoing, defendant's motion filed October 3, 1995 to dismiss the case for failure to state a claim or, alternatively, for summary judgment is DENIED. Accordingly, plaintiff shall be permitted to present evidence that the unauthorized agreement between plaintiff and Dighera was ratified by an authorized official. However, plaintiff may not proceed on a theory that Dighera had implied actual authority to bind the government or on a theory that the USMS institutionally ratified the agreement between Dighera and plaintiff.

The parties shall file a joint status report not later than Friday, January 30, 1998 setting forth their views concerning the prospects of settlement and their proposals for the most desirable means to resolve the remaining merits issues. It is anticipated that upon the filing of the joint status report the court will initiate an unrecorded telephone conference to discuss status and scheduling.